ams

**UNITED STATES DISTRICT COURT**
**DISTRICT OF KANSAS**

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br>STATE OF KANSAS,<br>STATE OF MINNESOTA, and<br>STATE OF NORTH CAROLINA,<br><br>    Plaintiffs,<br><br>    v.<br><br>AFFILIATE STRATEGIES, INC.,<br>LANDMARK PUBLISHING GROUP, L.L.C.,<br>    (d/b/a G.F. INSTITUTE and GRANT<br>    FUNDING INSTITUTE),<br>GRANT WRITERS INSTITUTE, L.L.C.,<br>ANSWER CUSTOMERS, L.L.C.,<br>APEX HOLDINGS INTERNATIONAL, L.L.C.,<br>BRETT BLACKMAN, individually and as an<br>    officer, manager, and/or member of<br>    Affiliate Strategies, Inc., Landmark<br>    Publishing Group, L.L.C., Grant Writers<br>    Institute, L.L.C., Answer Customers,<br>    L.L.C., and Apex Holdings International,<br>    L.L.C.,<br>JORDAN SEVY, individually and as a manager<br>    of Landmark Publishing Group,<br>JAMES RULISON, individually and as president<br>    of Answer Customers, L.L.C.,<br>REAL ESTATE BUYERS FINANCIAL<br>    NETWORK LLC (d/b/a GRANT<br>    WRITERS RESEARCH NETWORK),<br>MARTIN NOSSOV, individually and as a<br>    manager and member of Real Estate<br>    Buyers Financial Network LLC, and<br>ALICIA NOSSOV, individually and as a<br>    manager and member of Real Estate<br>    Buyers Financial Network LLC,<br><br>    Defendants. | **Case No. 09-4104-JAR-KGS** |

**MEMORANDUM AND ORDER**

Before the Court is defendants Martin Nossov's and Alicia Nossov's Motion to Dismiss for Lack of Personal Jurisdiction (Doc. 44). The motion is fully briefed and the Court is prepared to rule. As described in more detail below, the Court denies the motion to dismiss.

## I. Factual Background

Plaintiffs filed this action on July 20, 2009 against several defendants that allegedly participated in a scheme to "fleece" consumers out of millions of dollars by selling them bogus federal grant-related products and services. The Complaint seeks an injunction and other equitable relief pursuant to the Federal Trade Commission Act ("FTC Act"),[1] the Telemarketing and Consumer Fraud and Abuse Prevention Act ("Telemarketing Act"),[2] the Kansas Consumer Protection Act,[3] the Minnesota Uniform Deceptive Trade Practices Act,[4] the Minnesota Prevention of Consumer Fraud Act,[5] and the North Carolina Unfair and Deceptive Trade Practices Act.[6] The Complaint seeks to obtain temporary, preliminary, and permanent injunctive relief, rescission or reformation of contracts, restitution, disgorgement of ill-gotten gains, civil penalties and other equitable relief for defendants' acts or practices.

Real Estate Buyers Financial Network ("REBFN") is a limited liability company registered in North Carolina. Plaintiffs allege claims against the Nossovs individually and as managers or members of REBFN based on the allegation that the Nossovs are or have been

---

[1] 15 U.S.C. §§ 53(b), 57(b).

[2] 15 U.S.C. §§ 6101–6108.

[3] K.S.A. §§ 50-623–50-679.

[4] Minn. Stat. §§ 325D.43–325D.48, 325F.67.

[5] Minn. Stat. §§ 325F.68–325F.70, 325F.71, subd. 2.

[6] N.C. Gen. Stat. §§ 75-1.1–75-42.

officers, directors, members, and/or managers of REBFN. Alicia Nossov signed LLC Annual Report forms as a "Manager" or "Managing Member" of REBFN in 2007, 2008, and 2009.[7] Martin Nossov is listed as a Member on the 2008 Annual Report and a handwritten note next to his name, initialed by Alicia Nossov on 3/24/09, states "managing member."[8]

Plaintiffs allege that "REBFN" is controlled by defendants Martin and Alicia Nossov ("the Nossovs") and that they played an integral role in the scam by making misrepresentations to consumers throughout the United States through REBFN's role as a telemarketing company that sold the bogus grant research services offered by defendants Affiliate Strategies, Inc., Landmark Publishing Group, LLC, Grant Writers Institute, LLC, Answer Customers, LLC, Apex Holdings International, LLC, Brett Blackman, Jordan Sevy, and James Rulison (collectively, "the ASI defendants"). Plaintiffs attach numerous e-mails between Martin Nossov and the ASI defendants regarding grant writing services.

## II.    Legal Standards

The Nossovs seek dismissal under Fed. R. Civ. P. 12(b)(2). Plaintiffs bear the burden of establishing personal jurisdiction over these nonresident defendants.[9] When the Court declines to hold an evidentiary hearing, as it does here, "the motion rests on the plaintiff's complaint and affidavits submitted by the parties, the plaintiff need only make a prima facie showing of personal jurisdiction."[10] Plaintiffs may make the showing "by demonstrating, via affidavit or

---

[7](Doc. 72, Ex. 1.)

[8]*Id.*

[9]*OMI Holdings, Inc. v. Royal Ins. Co. of Can.*, 149 F.3d 1086, 1091 (10th Cir. 1998) (quoting *Rambo v. Am. S. Ins. Co.*, 839 F.2d 1415, 1417 (10th Cir. 1988)).

[10]*Id.*; *Multi-Media Int'l LLC v. Promag Retail Servs., LLC*, 343 F. Supp. 2d 1024, 1027 (D. Kan. 2004).

3

other written materials, facts that if true would support jurisdiction over the defendant. In order to defeat a plaintiff's prima facie showing of jurisdiction, a defendant must present a compelling case demonstrating 'that the presence of some other considerations would render jurisdiction unreasonable.'"[11] "If the parties present conflicting affidavits, all factual disputes are resolved in the plaintiff's favor, and the plaintiff's prima facie showing is sufficient notwithstanding the contrary presentation by the moving party."[12]

The Complaint invokes federal question jurisdiction pursuant to the FTC Act and the Telemarketing Act. In a federal question case, the Court must determine: "(1) whether the applicable statute potentially confers jurisdiction by authorizing service of process on the defendant and (2) whether the exercise of jurisdiction comports with due process."[13]

Neither the Nossovs nor plaintiffs provide an entirely accurate recitation of the applicable legal framework in this case. The FTC Act provides: "In any suit under this section, process may be served on any person, partnership, or corporation wherever it may be found."[14] The parties do not dispute that the FTC Act allows nationwide service of process, nor that the Nossovs were properly served under the statute. The Tenth Circuit has explained that when nationwide service of process is authorized by the governing federal statute, "it becomes the statutory basis for personal jurisdiction" provided that due process is satisfied.[15] In such a case,

---

[11]*Multi-Media Int'l LLC*, 343 F. Supp. 2d at 1027 (quoting *OMI Holdings*, 149 F.3d at 1091).

[12]*Ten Mile Indus. Park v. W. Plains Serv. Corp.*, 810 F.2d 1518, 1527 (10th Cir. 1987).

[13]*Peay v. Bellsouth Med. Assistance Plan*, 205 F.3d 1206, 1209 (10th Cir. 2000) (quotations omitted); *see also Multi-Media Int'l LLC.*, 343 F. Supp. 2d at 1027.

[14]15 U.S.C. § 53(b).

[15]*Peay*, 205 F.3d at 1210; *see also Cory v. Aztec Steel Bldg., Inc.*, 468 F.3d 1226, 1229 (10th Cir. 2006).

"the Fifth Amendment requires the plaintiff's choice of forum to be fair and reasonable to the defendant. In other words, the Fifth Amendment protects individual litigants against the burdens of litigation in an unduly inconvenient forum."[16]

To show that jurisdiction offends the Fifth Amendment, the Nossovs must establish that their liberty interests actually have been infringed.[17] In determining whether the Nossovs have met their burden "of establishing constitutionally significant inconvenience," the Court should consider:

> (1) the extent of the defendant's contacts with the place where the action was filed; (2) the inconvenience to the defendant of having to defend in a jurisdiction other than that of his residence or place of business, including (a) the nature and extent and interstate character of the defendant's business, (b) the defendant's access to counsel, and (c) the distance from the defendant to the place where the action was brought; (3) judicial economy; (4) the probable situs of the discovery proceedings and the extent to which the discovery proceedings will take place outside the state of the defendant's residence or place of business; and (5) the nature of the regulated activity in question and the extent of impact that the defendant's activities have beyond the borders of his state of residence or business.
> 
> We emphasize that it is only in highly unusual cases that inconvenience will rise to a level of constitutional concern. Certainly, in this age of instant communication, and modern transportation, the burdens of litigating in a distant forum have

---

[16] *Peay*, 205 F.3d at 1212 (quotation omitted).

[17] *Id.* The Nossovs conflate the due process inquiries under the Fifth and Fourteenth Amendments. They cite to the prefatory discussion in *Peay* about the due process inquiry under the Fourteenth Amendment and then rely on cases applying the Fourteenth Amendment analysis, rather than those that apply the *holding* in *Peay* that "the Fifth Amendment requires the plaintiff's choice of forum to be fair and reasonable to the defendant," and the appropriate factors to consider in making this determination. *Id.*; *see, e.g.*, *Lone Star Steakhouse & Saloon, Inc. v. Adams*, 169 F. Supp. 2d 1197, 1200 (D. Kan. 2001). The Nossovs' argument that this is a "modified standard" that is rarely applied and that it is less applicable here than the framework applied in diversity cases, is unavailing. *See TH Agric. & Nutrition, LLC v. Ace European Group Ltd.*, 488 F.3d 1282, 1286 (10th Cir. 2007) (determining personal jurisdiction in a diversity action). Instead, the Court applies the appropriate due process standard that applies in cases where nationwide service of process is authorized, pursuant to the Tenth Circuit's unambiguous holding in *Peay*.

lessened.[18]

If the Nossovs make a showing that litigation in Kansas is unduly inconvenient, "then jurisdiction will comport with due process only if the federal interest in litigating the dispute in the chosen forum outweighs the burden imposed on the defendant."[19] In making this determination,

> courts should examine the federal policies advanced by the statute, the relationship between nationwide service of process and the advancement of these policies, the connection between the exercise of jurisdiction in the chosen forum and the plaintiff's vindication of his federal right, and concerns of judicial efficiency and economy. Where . . . Congress has provided for nationwide service of process, courts should presume that nationwide personal jurisdiction is necessary to further congressional objectives.[20]

## III. Discussion

### A. *Defendants' Status as Corporate Officers*

The Nossovs argue that personal jurisdiction must be evaluated based on their individual contacts with Kansas, not on their representative contacts through REBFN. Plaintiffs disagree, arguing that jurisdiction over the Nossovs may be premised on their contacts as representatives of REBFN.

The Tenth Circuit has adopted the "fiduciary shield doctrine," which states that "where

---

[18] *Peay*, 205 F.3d at 1212–13 (citations, quotations, and footnote omitted); *see Lone Star Steakhouse & Saloon, Inc.*, 169 F. Supp. 2d at 1200; *Talkin v. Deluxe Corp.*, No. 05-2305-CM, 2007 WL 1469643, at *2 (D. Kan. May 18, 2007). Plaintiffs misread *Peay* in contending that the Nossovs need not show any contacts with the State of Kansas in order to comport with due process. The extent of the Nossovs' contacts with Kansas is one factor that the Court should consider under *Peay* in determining whether they have established constitutionally significant inconvenience. Plaintiffs point the Court to *SEC v. Knowles*, but that case "merely stands for the narrow proposition that under the facts and circumstances presented in that case, § 77v(a) authorized the district court to exercise and enforce its subpoena power worldwide." *Peay*, 205 F.3d at 1212 (discussing *SEC v. Knowles*, 87 F.3d 413 (10th Cir. 1996)).

[19] *Peay*, 205 F.3d at 1213 (quotation omitted).

[20] *Id.* (quoting *Republic of Pan. v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935, 948 (11th Cir. 1997)).

6

the acts of individual principals of a corporation in the jurisdiction were carried out solely in the individuals' corporate or representative capacity, the corporate structure will ordinarily insulate the individuals from the court's jurisdiction."[21] Instead, "jurisdiction over the individual officers and directors must be based on their individual contacts with the forum state."[22] The Supreme Court has explained that defendants' "contacts with [the forum state] are not to be judged according to their employer's activities there. On the other hand, their status as employees does not somehow insulate them from jurisdiction. Each defendant's contacts with the forum State must be assessed individually."[23]

The Nossovs do not identify and the Court is unable to locate a case in this Circuit where the fiduciary shield doctrine has been applied under a *Peay* due process analysis. As Judge Crow has observed, "The Tenth Circuit has accepted the use of the fiduciary shield doctrine for individual corporate officers *defending a tort claim* where they have no personal contacts, independent of their representative contacts, . . . ."[24] There are no tort claims alleged in this case, only statutory claims for relief.[25]

---

[21]*Ten Mile Indus. Park v. W. Plains Serv. Corp.*, 810 F.2d 1518, 1527 (10th Cir. 1987).

[22]*Id.*

[23]*Calder v. Jones*, 465 U.S. 783, 790 (1984).

[24]*Traffas v. Bridge Capital Corp.*, No. 90-1304-C, 1990 WL 251740, at *6 (D. Kan. Dec. 3, 1990) (emphasis added).

[25]*See Rusakiewicz v. Lowe*, 556 F.3d 1095, 1102–03 (10th Cir. 2009) (discussing doctrine in the context of state law tort claims); *Kohnle v. U.S. Telecom, Inc.*, 960 F. Supp. 249, 251 (D. Kan. 1997) (applying to constitutional torts and State law tort claims); *Key Indus., Inc. v. O'Doski, Sellers & Clark, Inc.*, 872 F. Supp. 858, 863–64 (D. Kan. 1994) ("The decisions do not show, however, whether the Tenth Circuit considers the doctrine to operate as an aspect or factor of due process analysis or as an independent and preclusive principle of equity."); *Murray v. Sevier*, 156 F.R.D. 235, 250 (D. Kan. 1994) (diversity case). *But cf. McClelland v. Watling Ladder Co.*, 729 F. Supp. 1316, 1321 (W.D. Okla. 1990) (explaining that the fiduciary shield doctrine and the due process inquiry are "animated by a similar concern for fairness.").

The fiduciary shield doctrine does not operate to bar jurisdiction where the liability of the individual defendants is predicated on their own personal acts as individuals, not on their status as corporate officers.[26] And "if the corporation is not a viable one and the individuals are in fact conducting personal activities and using the corporate form as a shield, a court may feel compelled to pierce the corporate veil and permit assertion of personal jurisdiction over the individuals."[27] The Court proceeds to consider the contacts with Kansas individually with respect to each of the Nossovs keeping these principles in mind.

## B.   *Constitutionally Significant Inconvenience*

### 1.   Extent of Defendants' Contacts with Kansas

The Nossovs deny transacting any personal business in the State of Kansas with regard to any of the matters set forth in the Complaint, personally communicating with any Kansas consumer by telephone or written correspondence, and personally entering into any contracts with Kansas residents. Plaintiffs first point to the fact that the Nossovs admit that REBFN contacted consumers in Kansas as part of their telemarketing operation and that REBFN conducted telemarketing on behalf of the Kansas-based ASI defendants. They also point to Martin Nossov's e-mail communications with the ASI defendants discussing consumer questions about the grant writing services and discussing how the revenue would be shared between the corporate parties. Plaintiffs point to no evidence of contact between Alicia Nossov and the State of Kansas.

Plaintiffs submit several e-mails between Martin Nossov and the ASI defendants that

---

[26]*Rusakiewicz*, 556 F.3d at 1102–03.

[27]*Ten Mile Indus. Park v. W. Plains Serv. Corp.*, 810 F.2d 1518, 1527 (10th Cir. 1987).

were retrieved by an FTC investigator from the hard drive and computer servers of the corporate defendants' business premises. On many of these e-mails, Martin Nossov used the e-mail address martin@ret123.com with "Martin Phillips" as the display name, and martin@eiri-in.com, with "Martin" as the display name. Many of the e-mails were drafted by Martin Nossov to the ASI defendants, relaying consumer complaints about grant writing services. Some of the e-mails discuss the split in revenue that REBFN is entitled to. The Court agrees with the Nossovs that these e-mails are all relevant to REBFN's contacts with Kansas, not Martin Nossov's contacts in his individual capacity. Each e-mail from Martin Nossov contains a signature line with contact information for either REBFN; Real Estate Trainers Division, Economic Industry Reports, Inc. New York-North Carolina; "RETN Grant Writers Division, An Economic Industry Reports, Inc. company"; or Grant Writers Research Network.

Plaintiffs have submitted no evidence that REBFN is not viable and that the Nossovs are using it as shield to conduct personal activities.[28] Assuming the facts alleged in the Complaint to be true, the Nossovs' contacts with Kansas are entirely premised on REBFN's contacts with Kansas. Plaintiffs submit no evidence to contradict the assertions in the Nossovs' affidavits that they have had no contacts with the State of Kansas in their personal capacities.

2. **Inconvenience to the Defendants of Having to Defend in Kansas**

Litigating this case in Kansas will be obviously inconvenient for the Nossovs. The Nossovs' activities as representatives of REBFN, a telemarketing company that contacts consumers from all of over the United States and conducts business on behalf of the ASI

---

[28]At this time, the Court only considers the necessary showing for personal jurisdiction. The parties should not conflate this inquiry with the question of liability for individual defendants, which is clearly provided for under the FTC Act. *See FTC v. Freecom Commc'ns, Inc.*, 401 F.3d 1192, 1202 (10th Cir. 2005).

defendants, show a willingness to be subjected to suit in Kansas. The Nossovs routinely communicated with the Kansas-based ASI defendants and REBFN, a company they direct and control, communicated with consumers nationwide as part of the activity that gives rise to the allegations in the Complaint. And, the Court notes that defendants have been able to secure access to counsel in Kansas to assist their North Carolina counsel. Moreover, "modern methods of communication and transportation greatly reduce the significance of this physical burden"[29] associated with litigation in Kansas. To be sure, neither of these defendants have been required to appear in this district for purposes of this case to date.

### 3. Judicial Economy and Location of Discovery

Plaintiffs maintain that considerations of judicial economy weigh in favor of this Court exercising jurisdiction over the Nossovs. They cite the fact that the case has proceeded with the numerous other defendants involved and that the case has proceeded thus far in an expedited fashion—plaintiffs obtained temporary relief in the form of a temporary restraining order and preliminary injunction and a Receiver was appointed with regard to the Receivership Defendants. At this point, requiring the plaintiffs to file a separate suit against the Nossovs for the same activities in North Carolina would be a waste of judicial resources. The Court agrees.

Moreover, discovery is proceeding in this matter and will likely take place in both Kansas and North Carolina, as well as other places, according to plaintiffs. As there is no indication that an overwhelming amount of evidence in this matter is located in North Carolina, the Court finds that the discovery factor is at best neutral in assessing inconvenience.

### 4. Nature of the Regulated Activity and Extent of non-Kansas Impacts

---

[29]*Peay v. Bellsouth Med. Assistance Plan*, 205 F.3d 1206, 1213 (10th Cir. 2000).

The nature of the relegated activity here is telemarketing, which is a heavily regulated industry. As already discussed, the FTC Act allows for nationwide service of process[30] and the Telemarketing Act regulates telemarketing activity in order to protect consumers from telemarketing fraud, deception, and abuse.[31] Congress has found that "[t]elemarketing differs from other sales activities in that it can be carried out by sellers across State lines without direct contact with the consumer. Telemarketers also can be very mobile, easily moving from State to State."[32] This factor weighs in favor of the Court's exercise of jurisdiction, as the defendants are alleged to participate in an industry that clearly impacts consumers outside the borders of North Carolina.

While the Court finds that the Nossovs have virtually no contacts in their individual capacities with Kansas, the other factors that the Court must consider in its Fifth Amendment analysis weigh against finding that their liberty interests have actually been infringed, especially concerns about judicial economy and the nature of the regulated activity. After considering these factors as a whole, the Court is unable to find that an exercise of this Court's jurisdiction will "'make litigation so gravely difficult and inconvenient that [they] unfairly [are] at a severe disadvantage in comparison to [their] opponent.'"[33]

## C. *Federal Interests*

Even if the Court found that defendants made a sufficient showing of constitutional

---

[30] 15 U.S.C. § 53(b).

[31] *See* 15 U.S.C. § 6101.

[32] *Id.* § 6101(1).

[33] *Lone Star Steakhouse & Saloon, Inc. v. Adams*, 169 F. Supp. 2d 1197, 1200 (D. Kan. 2001) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478 (1985)).

inconvenience, it would still find that jurisdiction comports with due process because "the federal interest in litigating the dispute in the chosen forum outweighs the burden imposed on the defendant."[34]

Congress amended the FTC Act to provide for nationwide service of process in furtherance of strong federal policy considerations:

> Subsection (a) of this section amends section 13 of the FTC Act to permit defendants from different districts to be brought into FTC actions in Federal district court. In addition, service of process provisions are added to facilitate notification for parties to the actions. Subsection (b) of this section provides that process may be served by various means, including service to an officer of a corporation, delivery to the office of a corporation, or service through the mail.
> The FTC has testified that this authority would assist its efforts to combat consumer fraud. According to the FTC, consumer fraud occurs frequently and involves billions of dollars each year. Health fraud, telemarketing scams, and the like are involved, and the FTC has indicated that such fraud is on the increase. One of the greatest difficulties identified by the FTC in combating consumer fraud is its inability to sue multiple defendants in a variety of jurisdictions. The FTC has some authority under current law in this area. Section 13 of the FTC Act authorizes the FTC to file suit to enjoin any violation of the FTC. The FTC can go into court ex parte to obtain an order freezing assets, and is also able to obtain consumer redress. Section 13(b) also provides that any such suit is to be brought in the district where the defendant resides or transacts business. The FTC has used its section 13(b) injunction authority to counteract consumer fraud, and the Committee believes that the expansion of venue and service of process in the reported bill should assist the FTC in its overall efforts.[35]

It is apparent that the nationwide service of process provision in the FTC Act advances the

---

[34] *See Peay*, 205 F.3d at 1213.

[35] S. REP. NO. 103-130, at 15-16 (1994), as reprinted in 1994 U.S.C.C.A.N. 1776.

federal policy of combating consumer fraud, which frequently involves multiple defendants located in different districts.

Moreover, plaintiffs have alleged in the Complaint a fraudulent scheme that involves all of the named defendants that is distinctly connected to Kansas. To exercise jurisdiction over REBFN but require plaintiffs to file suit in North Carolina against the Nossovs would deny plaintiffs vindication of their federal rights to enforce the FTC Act against multiple defendants in one jurisdiction. Concerns about judicial economy and efficiency also weigh heavily in favor of this Court exercising jurisdiction over the Nossovs, as already discussed. In sum, the Court finds that its exercise of jurisdiction over the Nossovs is necessary to further congressional objectives and that the federal interest in litigating this dispute in Kansas outweighs the burden imposed on defendants. Accordingly, the Nossovs' motion to dismiss is denied.

**IT IS THEREFORE ORDERED BY THE COURT** that defendants Martin Nossov's and Alicia Nossov's Motion to Dismiss for Lack of Personal Jurisdiction (Doc. 44) is **denied**.

Dated:  November 10, 2009

 S/ Julie A. Robinson
JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE