ams

# UNITED STATES DISTRICT COURT
# DISTRICT OF KANSAS

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br>STATE OF KANSAS,<br>STATE OF MINNESOTA, and<br>STATE OF NORTH CAROLINA,<br><br>      Plaintiffs,<br><br>      v.<br><br>AFFILIATE STRATEGIES, INC.,<br>LANDMARK PUBLISHING GROUP, L.L.C.,<br>      (d/b/a G.F. INSTITUTE and GRANT<br>      FUNDING INSTITUTE),<br>GRANT WRITERS INSTITUTE, L.L.C.,<br>ANSWER CUSTOMERS, L.L.C.,<br>APEX HOLDINGS INTERNATIONAL, L.L.C.,<br>BRETT BLACKMAN, individually and as an<br>      officer, manager, and/or member of<br>      Affiliate Strategies, Inc., Landmark<br>      Publishing Group, L.L.C., Grant Writers<br>      Institute, L.L.C., Answer Customers,<br>      L.L.C., and Apex Holdings International,<br>      L.L.C.,<br>JORDAN SEVY, individually and as a manager<br>      of Landmark Publishing Group,<br>JAMES RULISON, individually and as president<br>      of Answer Customers, L.L.C.,<br>REAL ESTATE BUYERS FINANCIAL<br>      NETWORK LLC (d/b/a GRANT<br>      WRITERS RESEARCH NETWORK),<br>MARTIN NOSSOV, individually and as a<br>      manager and member of Real Estate<br>      Buyers Financial Network LLC, and<br>ALICIA NOSSOV, individually and as a<br>      manager and member of Real Estate<br>      Buyers Financial Network LLC,<br><br>      Defendants. | Case No. 09-4104-JAR-KGS |

**MEMORANDUM AND ORDER**

Before the Court is defendant Real Estate Buyers Financial Network LLC's ("REBFN") Motion to Return Seized Property (Doc. 57). The motion is fully briefed; both plaintiffs and the Receiver have responded and REBFN has replied. As described in more detail below, the Court grants REBFN's motion and orders the Receiver to return to REBFN the money that the Receiver seized from REBFN's merchant accounts.

*Background*

Plaintiffs filed this action on July 20, 2009 against several defendants that allegedly participated in a scam to "fleece" consumers out of millions of dollars by selling them bogus grant-related products and services. The Complaint seeks an injunction and other equitable relief pursuant to the Federal Trade Commission Act ("FTC Act"),[1] the Telemarketing and Consumer Fraud and Abuse Prevention Act ("Telemarketing Act"),[2] the Kansas Consumer Protection Act,[3] the Minnesota Uniform Deceptive Trade Practices Act,[4] the Minnesota Prevention of Consumer Fraud Act,[5] and the North Carolina Unfair and Deceptive Trade Practices Act.[6] The Complaint seeks to obtain temporary, preliminary, and permanent injunctive relief, rescission or reformation of contracts, restitution, disgorgement of ill-gotten gains, civil penalties and other equitable relief for defendants' acts or practices.

Plaintiffs allege that defendant Real Estate Buyers Financial Network ("REBFN") is

---

[1] 15 U.S.C. §§ 53(b), 57(b).

[2] 15 U.S.C. §§ 6101–6108.

[3] K.S.A. §§ 50-623–50-679.

[4] Minn. Stat. §§ 325D.43–325D.48, 325F.67.

[5] Minn. Stat. §§ 325F.68–325F.70, 325F.71, subd. 2.

[6] N.C. Gen. Stat. §§ 75-1.1–75-42.

2

controlled by defendants Martin and Alicia Nossov ("the Nossovs") and that they played an integral role in the scam by conducting telemarketing and making misrepresentations to consumers throughout the United States to sell the bogus grant research services offered by defendants Affiliate Strategies, Inc., Landmark Publishing Group, LLC, Grant Writers Institute, LLC, Answer Customers, LLC, Apex Holdings International LLC, Brett Blackman, Jordan Sevy, and James Rulison.

Along with the Complaint, plaintiffs filed a motion for temporary restraining order and asset freeze as to all defendants except REBFN, the Nossovs. Plaintiffs explicitly represented to the Court that they were not seeking to enjoin either REBFN or the Nossovs because their participation in the alleged scam ceased in April 2009.

After a hearing, the Court entered a Temporary Restraining Order ("TRO") with Asset Freeze (Doc. 28) against all the corporate defendants other than REBFN on July 24, 2009. The Court also appointed a Temporary Receiver, Larry Cook. Under the TRO,

> the Receiver is authorized and directed to accomplish the following: . . . Take exclusive custody, control, and possession of all assets and documents of, or in the possession, custody, or under the control of, the Receivership Defendants, wherever situated. The Receiver shall have full power to divert mail and to sue for, collect, receive, take in possession, hold, and manage all assets and documents of the Receivership Defendants and other persons or entities whose interests are now under the direction, possession, custody, or control of, the Receivership Defendants.[7]

The TRO provides for transfer of Receivership Property to the Receiver. It requires transfer upon request for all assets of the Receivership Defendants and all assets "belonging to the persons or entities whose interests are now under the direction, possession, custody, or control

---

[7](Doc. 28, Part XIII.B.)

3

of, the Receivership Defendants . . . ."[8]  "Receivership Defendants" are Affiliate Strategies, Inc., Landmark Publishing Group, LLC d/b/a G.F. Institute and Grant Funding Institute, Grant Writers Institute, LLC, Answer Customers, LLC, and Apex Holdings International, LLC.[9]

The Court held a preliminary injunction hearing on September 1, 2009 and the parties submitted a stipulated Preliminary Injunction Order with Asset Freeze, Appointment of Receiver, and Other Equitable Relief ("PI") that was signed and filed that same day.[10]  The PI appointed Mr. Cook as a Permanent Receiver and includes identical language as the TRO with regard to the Receiver's duty to take exclusive custody, control, and possession of the Receivership Defendants' assets.[11]  The PI also contains a definition of "Receivership Defendants" that is identical to the TRO.

Since April 2009, REBFN has maintained four merchant accounts with Century Bankcard Services, Inc. ("Century Bankcard") and has primarily used these accounts to satisfy requests from consumers for refunds.  On or about August 17, 2009, John Rowe of Century Bankcard informed Martin Nossov that REBFN's merchant account balances totaled $305,877.58, but that they had been frozen at the direction of plaintiff Federal Trade Commission ("FTC").

*Discussion*

REBFN filed the instant motion seeking return of the property seized from its Century

---

[8](Doc. 28, Part XIV.A., D.)

[9](Doc. 28 at 6 ¶ 9.)

[10](Doc. 78.)

[11](Doc. 78, Part XIV.B.)

4

Bankcard merchant accounts. REBFN argues that the Receiver has no authority under either the TRO or the PI to seize its assets, as it is not one of the Receivership Defendants, as that term is defined in the TRO and PI.

The Receiver and plaintiffs contend in their responses that REBFN and the Nossovs were agents of the "ASI Defendants,"[12] and that they received income as a result of their activities on behalf of the ASI Defendants. They rely on the language in the TRO and PI that allows the Receiver to "collect, receive, take in possession, hold, and manage all assets and documents of the Receivership Defendants and other persons or entities whose interests are now under the direction, possession, custody, or control of, the Receivership Defendants." The Receiver contends that because REBFN conducted telemarketing in the name of Grant Writers Institute to sell the Receivership Defendants' grant research services, it was an agent of the Receivership Defendants.

The evidence submitted with the brief in support of a TRO shows that REBFN made certain claims to consumers in the course of telemarketing between February 2008 and April 2009, as directed by Grant Writers Institute. Specifically, plaintiffs offered evidence that Grant Writers Institute "admits that it provided REBFN with telemarketing scripts as well as GWI's Service Agreement, Enrollment Agreement, and Terms & Conditions."[13] Plaintiffs also offered evidence that "REBFN held itself out as, or as calling on behalf of Grant Writers Institute, in telemarketing calls to consumers."[14]

---

[12] Plaintiffs reference to the ASI Defendants include the Receivership Defendants plus defendants Blackman, Sevy and Rulison.

[13] (Doc. 10 at 11 n.33; Doc. 10, Ex. 49, Attachs. K–M.)

[14] *Id.*, Ex. 49, Attach. F.

But neither plaintiffs nor the Receiver offer any evidence that REBFN is an entity "whose interests are *now* under the direction, possession, custody, or control of, the Receivership Defendants." The language in the TRO and PI does not employ the terms "agent" or "representative."[15] And assuming that the language in the TRO and PI applies to agents of the Receivership Defendants, it only authorizes seizures for such entities who are currently agents of the Receivership Defendants. Plaintiffs have maintained throughout the proceedings that REBFN's and the Nossovs' participation in the scheme ended in April 2009 and declined to seek injunctive relief against them.[16] The TRO and injunction in this case are not ambiguous. Because REBFN is not a Receivership Defendant, there must be some showing that they are now under the direction, possession, custody or control of the Receivership Defendants.[17] Neither the Receiver nor plaintiffs have made this showing.

Instead, the Receiver and plaintiffs focus on issues unrelated to the construction of the TRO and PI. They point to the amount of sales by REBFN on behalf of the ASI Defendants, and the actions that REBFN took on behalf of the ASI Defendants prior to April 2009. The Receiver also focuses on the fact that the merchant accounts at issue were created prior to April 2009 and thus, are funds derived from the fraud. Plaintiffs argue that because they seek consumer redress

---

[15]The Court is to read the injunction in light of the order as a whole. *Reliance Ins. Co. v. Mast Constr. Co.*, 159 F.3d 1311, 1316 (10th Cir. 1998). The TRO explicitly defines the term "Representatives," as "Defendants' successors, assigns, officers, agents, servants, employees, or attorneys, and any person or entity in active concert or participation with them who receives actual notice of this Order by personal service or otherwise." (Doc. 28 at 6 ¶ 10.)

[16]"Plaintiffs, at this stage of the litigation, do not seek entry of a TRO against REBFN and the Nossovs. Their activities in furtherance of the scam purportedly ceased in April 2009. Because, however, they were an integral part of the scheme and have engaged in multiple law violations that are easily repeated, they are properly subject to an action for permanent injunctive relief." (Doc. 10 at 3.)

[17]The Court notes that the TRO and PI were both largely drafted by plaintiffs.

as part of the ultimate relief in this case, it is appropriate to restrain *any* assets derived from the illegal conduct, pointing to the Court's inherent power to render an effective final judgment. The Court finds no authority for the proposition that the Receiver may freeze and hold assets not governed by the TRO and PI that this Court entered and that was largely drafted by plaintiffs. The authority cited by plaintiffs would be relevant if the issue before the Court was whether injunctive relief against these entities was appropriate, i.e., a motion for injunctive relief, which has never been presented to the Court for decision. But the Court has already conducted this inquiry with regard to the entities against which plaintiffs explicitly sought to obtain preliminary injunctive relief. While plaintiffs are correct that an injunction binds non-parties who are in "privity" with plaintiffs, are represented by them, or subject to their control,[18] plaintiffs have failed to show that REBFN and/or the Nossovs are now in privity with the Receivership Defendants, are represented by them, or are subject to their control. As such, it was inappropriate for the Receiver to seize their property and the Court must grant REBFN's motion.

**IT IS THEREFORE ORDERED BY THE COURT** that defendant Real Estate Buyers Financial Network LLC's Motion to Return Seized Property (Doc. 57) is **granted**. The Receiver is ordered to unfreeze and return the property seized from REBFN's Century Bankcard merchant accounts forthwith.

Dated: <u>November 10, 2009</u>

 S/ Julie A. Robinson
JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE

---

[18]*See S.E.C. v. Homa*, 514 F.3d 661, 674 (7th Cir. 2008). This case deals with the jurisdiction of the Court over non-parties who aid and abet a party in violating a court's injunction. *See also Reliance Ins. Co.*, 159 F.3d at 1316.