# UNITED STATES DISTRICT COURT
# DISTRICT OF KANSAS

| | |
|---|---|
| FEDERAL TRADE COMMISSION, )<br>STATE OF KANSAS, )<br>STATE OF MINNESOTA, and )<br>STATE OF NORTH CAROLINA, )<br> )<br>     Plaintiffs, )<br> )<br>     v. )<br> )<br>AFFILIATE STRATEGIES, INC., )<br>LANDMARK PUBLISHING GROUP, L.L.C., )<br>     (d/b/a G.F. INSTITUTE and GRANT )<br>     FUNDING INSTITUTE), )<br>GRANT WRITERS INSTITUTE, L.L.C., )<br>ANSWER CUSTOMERS, L.L.C., )<br>APEX HOLDINGS INTERNATIONAL, L.L.C., )<br>BRETT BLACKMAN, individually and as an )<br>     officer, manager, and/or member of )<br>     Affiliate Strategies, Inc., Landmark )<br>     Publishing Group, L.L.C., Grant Writers )<br>     Institute, L.L.C., Answer Customers, )<br>     L.L.C., and Apex Holdings International, )<br>     L.L.C., )<br>JORDAN SEVY, individually and as a manager )<br>     of Landmark Publishing Group, )<br>JAMES RULISON, individually and as president )<br>     of Answer Customers, L.L.C., )<br>REAL ESTATE BUYERS FINANCIAL )<br>     NETWORK LLC (d/b/a GRANT )<br>     WRITERS RESEARCH NETWORK), )<br>MARTIN NOSSOV, individually and as a )<br>     manager and member of Real Estate )<br>     Buyers Financial Network LLC, and )<br>ALICIA NOSSOV, individually and as a )<br>     manager and member of Real Estate )<br>     Buyers Financial Network LLC, )<br> )<br>     Defendants. )<br>_____ ) | **Case No. 09-4104-JAR-KGS** |

## MEMORANDUM AND ORDER

This matter comes before the Court on defendants Real Estate Buyers Financial Network LLC, Martin Nossov and Alicia Nossov's Motion to Dismiss Amended Complaint for Failure to State a Claim Upon Which Relief Can Be Granted (Docs. 124, 125), citing Rules 12(b)(6), 12(c), 12(h)(2) and 9(b) from the Federal Rules of Civil Procedure.  For the reasons stated in detail below, the Court denies defendants' motion without prejudice and grants plaintiffs leave to amend Counts VII, X, XI, XII, XIII, XIV, and XV.

## I.        Plaintiffs' Amended Complaint

Plaintiffs filed this action on July 20, 2009.  On December 9, 2009, plaintiffs filed an Amended Complaint against several defendants, alleging they participated in a scheme to "fleece" consumers out of millions of dollars by selling them bogus federal grant-related goods and services purporting to show consumers how to obtain grants, grant research, and/or writing or coaching services.  The Amended Complaint seeks an injunction and other equitable relief pursuant to the Federal Trade Commission Act ("FTC Act"),[1] the Telemarketing and Consumer Fraud and Abuse Prevention Act ("Telemarketing Act"),[2] the Kansas Consumer Protection Act ("KCPA"),[3] the Minnesota Uniform Deceptive Trade Practices Act,[4] the Minnesota Prevention of Consumer Fraud Act,[5] the North Carolina Unfair and Deceptive Trade Practices Act,[6] and the

---

[1] 15 U.S.C. §§ 53(b), 57(b).

[2] 15 U.S.C. §§ 6101–6108.

[3] K.S.A. §§ 50-623–50-679.

[4] Minn. Stat. §§ 325D.43–325D.48,  325F.67.

[5] Minn. Stat. §§ 325F.68–325F.70,  325F.71, subd. 2.

[6] N.C. Gen. Stat. §§ 75-1.1–75-42.

Illinois Consumer Fraud and Deceptive Business Practices Act.[7]  The Amended Complaint seeks to obtain temporary, preliminary, and permanent injunctive relief, rescission or reformation of contracts, restitution, disgorgement of ill-gotten gains, civil penalties and other equitable relief for defendants' acts or practices.

Real Estate Buyers Financial Network ("REBFN") is a limited liability company registered in North Carolina.  Plaintiffs allege claims against the Nossovs individually and as managers or members of REBFN based on the allegation that the Nossovs are or have been officers, directors, members, and/or managers of REBFN.

Plaintiffs allege that REBFN is controlled by defendants Martin and Alicia Nossov ("the Nossovs") and that they played an integral role in the scam by making misrepresentations to consumers throughout the United States through REBFN's role as a telemarketing company that sold the bogus grant research services offered by defendants Affiliate Strategies, Inc., Landmark Publishing Group, LLC, Grant Writers Institute, LLC, Answer Customers, LLC, Apex Holdings International, LLC, Brett Blackman, Jordan Sevy, and James Rulison (collectively, "the ASI defendants").  Plaintiffs attach to the Amended Complaint numerous marketing tools used by defendants to advertise their grant writing services.

Defendants move to dismiss of Counts II, III, IV, VII, VIII, IX, X, XI, XII, XIII, XIV, XV, XVII, and XVIII (sic.), arguing that these Counts were not alleged with particularity.  The Court summarizes these counts as follows:

### FTC Act Claims

Defendants made the following false and misleading and unsubstantiated representations,

---

[7]815 Ill. Comp. Stat. 505/2, *et seq.*

constituting deceptive practices:

- Grant Writers Institute has a 70% success rate in obtaining grant funding for consumers who purchase defendants' services (Count II);

- consumers who purchase the ASI Defendants' goods and services are likely to receive grant monies (Count III);

### *Telemarketing Act Claims*

Defendants engaged in the following deceptive telemarketing practices:

- Defendants misrepresented material aspects of the central characteristics of the grant-related services they sell, including, that consumers are guaranteed or highly likely to receive a $25,000 grant as a result of the grant-related services; Grant Writers Institute has a 70% success rate in obtaining grant funding for consumers who purchase ASI Defendants' services; and consumers who purchase ASI Defendants' grant-related and services were likely to receive grant monies (Count IV);

### *Kansas State Law Claims*

Defendants made the following "false and misleading" representations or deceptive or unconscionable acts:

- the uses, benefits, and characteristics of the ASI Defendants' goods and services have been proven or otherwise substantiated, without actually collecting such data to substantiate these representations (Count VII);

- charging Kansas consumers' credit cards for Grant Guide, prior to receiving signed confirmations from these consumers disclosing in full the terms of the transaction (Count VIII);

- charging Kansas consumers' credit cards for grant-related services, prior to receiving signed confirmation from these consumers that comply with K.S.A. § 50-672(b) (Count IX);

- soliciting consumers who are over 60 years of age (Count X);

### *Minnesota State Law Claims*

In advertising, marketing, promotion, offering for sale and sale of grant-related goods and services, defendants engaged in the following deceptive trade practices:

- causing a likelihood of confusion or of misunderstanding as to their goods and services and misrepresented the sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities of their goods and services (Count XI);

- making, publishing, disseminating, circulating or placing before the public advertisements containing untrue, deceptive, and misleading assertions, misrepresentations of statements of fact (Count XII);

- employing fraud, false pretense, false promise, misrepresentation, misleading statements and/or deceptive practices with the intent that others rely thereon (Count XIII);

- Soliciting consumers over the age of 62 years (Count XIV);

### North Carolina State Law Claims

Defendants engaged in the following unfair and deceptive trade practice:

- a practice of misrepresentation in the advertising, marketing, promotion, offering for sale and sale of grant-related goods and services, which were misleading, false and/or unsubstantiated (Count XV);

### Illinois State Law Claims

In connection with the offering for sale or sale of the grant research and writing services, defendants engaged in the following false, misleading and unsubstantiated representations, constituting deceptive trade practices:

- represented that Grant Writers Institute has a 70% success rate in obtaining grant funding for the consumers who purchase ASI Defendants' services (Count XVII);

- represented that consumers who purchase ASI Defendants' goods and services are likely to receive grant monies (Count XVIII).

## II.   Standards

Technically, it is impermissible to file an answer and thereafter file a Rule 12(b)(6)

motion to dismiss.[8]  However, because Rule 12(h)(2) permits the court to consider "[a] defense

---

[8]*See* Fed. R. Civ. P. 12(b) (a motion asserting defense of failure to state a claim "shall be made before pleading if a further pleading is permitted"); 5A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357, at 300–01 (2d ed. 1990) ("[A] post-answer Rule 12(b)(6) motion is untimely.").

of failure to state a claim upon which relief can be granted" within a Rule 12(c) motion for judgment on the pleadings,[9] the court may treat a Rule 12(b)(6) motion as if it had been submitted under Rule 12(c).[10]  The distinction between the two motions is purely formal, because the court must review a Rule 12(c) motion under the same standard that governs a Rule 12(b)(6) motion.[11]  In their motion to dismiss, defendants cite to Rules 12(b)(6), Rule 12(c), Rule 12(h)(2) and Rule 9(b).  Thus, the Court will consider their motion under Rule 12(c), as the standard of review is the same for a Rule 12(b)(6) motion.

Fed. R. Civ. P. 8(a)(2) provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  A complaint must give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.[12]  "This simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims."[13] "[G]ranting [a] motion to dismiss is a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice."[14] In reviewing a Rule 12(b)(6) motion to dismiss, the court will draw all reasonable inferences in

---

[9]Fed. R. Civ. P. 12(h).

[10]*Thomas v. Travnicek*, No. 00-3360-GTV, 2003 WL 22466194, at *1 (D. Kan. Aug. 15, 2003).

[11]*Ward v. Utah*, 321 F.3d 1263, 1266 (10th Cir. 2003) ("[w]e review a dismissal on the pleadings pursuant to Fed. R. Civ. P. 12(c) under the same standard applicable to a 12(b)(6) dismissal.") (citing *Ramirez v. Dep't of Corr.*, 222 F.3d 1238, 1240 (10th Cir. 2000)).

[12]*Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  The United States Supreme Court explained in *Bell Atl. Corp. v. Twombly*: "Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests."  550 U.S. 544, 555 n.3 (2007).

[13]*Swierkiewicz*, 534 U.S. at 512.

[14]*Dias v. City and County of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009).

favor of the plaintiff.[15]  "In evaluating a Rule 12(b)(6) motion to dismiss, courts may consider not only the complaint itself, but also attached exhibits, and documents incorporated into the complaint by reference."[16]  "'[T]he district court may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity.'"[17]

To survive a motion to dismiss, a complaint must present factual allegations, assumed to be true, that "raise a right to relief above the speculative level" and must contain "enough facts to state a claim to relief that is plausible on its face."[18]  Under this standard, "the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims."[19]  The plausibility standard does not require a showing of probability that "a defendant has acted unlawfully,"[20] but requires more than "a sheer possibility."[21]

The plausibility standard enunciated in *Bell Atlantic Corp. v. Twombly* seeks a middle

---

[15]*Id.*

[16]*Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009) (internal citations omitted); *Hall v. Bellmon*, 935 F.2d 1106, 1112 (10th Cir. 1991) ("A written document that is attached to the complaint as an exhibit is considered part of the complaint and may be considered in a Rule 12(b)(6) dismissal."); Fed. R. Civ. P. 10(c). Plaintiffs argue that the Court may also consider "matters of public record, orders, and items appearing in the record of the case." Doc. 138 at 9.  However, this standard is taken from cases discussing a Rule 12(b)(6) motion to dismiss based on res judicata.  That is not the case here.  It is generally recognized that, when matters outside of the complaint are presented and not excluded, the Court should treat the motion to dismiss as one of summary judgment under Rule 56.  *Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir. 1991).  In fact, the United States Supreme Court has noted that "[i]n passing on a motion to dismiss because the complaint fails to state a cause of action, the facts set forth in the complaint are assumed to be true and affidavits and other evidence produced on application for a preliminary injunction may not be considered."  *Land v. Dollar*, 330 U.S. 731, 735 n.4 (1947).

[17]*Smith*, 561 F.3d at 1098 (quoting *Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007)).

[18]*Twombly*, 550 U.S. at 555, 570.

[19]*Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (emphasis in the original).

[20]*Ashcroft v. Iqbal*, – U.S. –, 129 S. Ct. 1937, 1949 (2009).

[21]*Id.*

ground between heightened fact pleading and "allowing complaints that are no more than 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action,' which the Court stated 'will not do.'"[22] *Twombly* does not change other principles, such as that a court must accept all factual allegations as true and may not dismiss on the ground that it appears unlikely the allegations can be proven.[23]

The Supreme Court recently explained the analysis as a two-step process. For the purposes of a motion to dismiss, the court "must take all the factual allegations in the complaint as true, [but] we 'are not bound to accept as true a legal conclusion couched as a factual allegation.'"[24] Thus, the court must first determine if the allegations are factual and entitled to an assumption of truth, or merely legal conclusions that are not entitled to an assumption of truth.[25] Second, the court must determine whether the factual allegations, when assumed true, "plausibly give rise to an entitlement to relief."[26] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[27]

Under Rule 9(b), a party alleging fraud or mistake "must state with particularity the circumstances constituting fraud or mistake." However, "[m]alice, intent, knowledge, and other

---

[22]*Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 555).

[23]*Id.* (citing *Twombly*, 550 U.S. at 556).

[24]*Ashcroft*, – U.S. –, 129 S. Ct. at 1949-50.

[25]*Id.* at 1950.

[26]*Id.*

[27]*Id.* at 1949.

conditions of a person's mind may be alleged generally."[28]  The Court reads Rule 9(b) in

conjunction with the principles of Rule 8, "which calls for pleadings to be simple concise and

direct."[29]  "Rule 9(b)'s heightened pleading requirements serve to provide defendants adequate

notice of the plaintiff's claim, to protect defendants from reputational damage caused by

'improvident charges of wrongdoing,' and to 'inhibit the institution of strike suits.'"[30]  To

survive a motion to dismiss, an allegation of fraud must "set forth the time, place, and contents

of the false representation, the identity of the party making the false statements and the

consequences thereof."[31]  In other words, plaintiff must set out the "who, what, where, and

when" of the alleged fraud.[32]

## III.    Discussion

Defendants argue that various claims should be dismissed because plaintiffs have not

alleged particular facts in support of these Counts pursuant to Fed. R. Civ. P. 9(b).  Defendants

request plaintiffs (1) identify the REBFN employee or either Nossov who made the

misrepresentations; (2) specify the substance of REBFN's or either Nossov's false

misrepresentations; and (3) specify the dates or months in which the alleged fraud occurred.

Defendants argue that, because plaintiffs are governmental entities, they should be held to a

---

[28]Fed. R. Civ. P. 9(b).

[29]*Jamieson v. Vatterott Educ. Ctr., Inc.*, 473 F. Supp. 2d 1153, 1156 (D. Kan. 2007) (quoting *Schwartz v. Celestial Seasonings, Inc.*, 124 F.3d 1246, 1252 (10th Cir. 1997)).

[30]*Plastic Packaging Corp. v. Sun Chem. Corp.*, 136 F. Supp. 2d 1201, 1203 (D. Kan. 2001) (quoting *Farlow v. Peat, Marwick, Mitchell & Co.*, 956 F.2d 982, 986 (10th Cir. 1992)).

[31]*Schwartz*, 124 F.3d at 1252 (quoting *Lawrence Nat'l Bank v. Edmonds (In re Edmonds)*, 924 F.2d 176, 180 (10th Cir. 1991)).

[32]*Jamieson*, 473 F. Supp. 2d at 1156 (quoting *Plastic Packaging Corp.*, 136 F. Supp. 2d at 1203).

higher standard, as "they are not typical litigants."

Plaintiffs respond that Rule 9(b) heightened pleading does not apply to a public law-enforcement action brought by the Federal Trade Commission and State authorities under consumer protection laws. In the alternative, if heightened pleading is required, plaintiffs request leave to amend the complaint. "It is well settled that a federal court sitting in diversity applies federal pleading requirements 'even when the claim pleaded arises under state rather than federal law.'"[33]

Although defendants' motion references Rules 12(b)(6), Rule 12(c), Rule 12(h)(2), and Rule 9(b), defendants do not set out the elements of each claim they seek dismissed, or argue that plaintiffs' claims are not "plausible." Rather, defendants note a general lack of facts and argue that plaintiffs have failed to set out the "who, what, where, and when" of each claim required by Rule 9(b). Therefore, the Court discusses whether Rule 9(b) applies to each of plaintiffs' claims, and whether the facts alleged in each Count are sufficient under the appropriate pleading standard.

### 1. Federal Trade Commission Act Claims

The Tenth Circuit has expressly held that Rule 9(b) does not apply to a public action brought under Section 5 of the FTC Act. The primary purpose of Section 5 "is to protect the consumer public rather than to punish the wrongdoer."[34] "A § 5 claim simply is not a claim of fraud as that term is commonly understood or as contemplated by Rule 9(b)."[35] Consistent with

---

[33]*Windy City Metal Frabricators & Supply, Inc. v. CITTech. Fin. Servs. Inc.*, 536 F.3d 663, 670 (7th Cir. 2008) (quoting *Muick v. Glenayre Elecs.*, 280 F.3d 741, 743 (7th Cir. 2002)).

[34]*Fed. Trade Comm'n v. Freecom Commc'ns, Inc.*, 401 F.3d 1192, 1202 (10th Cir. 2005).

[35]*Id.* at 1203 n.7.

its purpose, Section 5 "requires the FTC to show the business entity made material misrepresentations *likely to mislead* ordinary consumers to their detriment."[36]  The Tenth Circuit has noted that requiring strict compliance with Fed. R. Civ. P. 9(b), or demanding allegations of "each individualized act (i.e., time, place, and manner) of deception," is inconsistent with this purpose and "highly impractical."[37]  The court explained that a public action brought by the FTC is "not a private or common law fraud action designed to remedy a singular harm, but a government action brought to deter deceptive acts and practices aimed at the public and to obtain redress on behalf of a large class of third-party consumers who purchased defendants' products and services over an extended period of time."[38]  Thus, "[u]nlike the elements of common law fraud, the FTC need not prove scienter, reliance, or injury to establish a § 5 violation."[39]

Section 45(a) of 15 U.S.C. makes it unlawful to use "unfair methods of competition in or

---

[36]*Id*. at 1203 (emphasis in original).

[37]*Id.* at 1203 n.7.

[38]*Id.*; *see also Fed. Trade Comm'n v. Sec. Rare Coin & Bullion Corp.*, 931 F.2d 1312, 1316 (8th Cir. 1991) (holding that, to satisfy the reliance requirement when seeking equitable relief under Section 13(b) of the Act, "the FTC need merely show that the misrepresentations or omissions were of a kind usually relied upon by reasonable and prudent persons, that they were widely disseminated, and that the injured consumers actually purchased the defendants' products").  The Eighth Circuit also noted

> It would be virtually impossible for the FTC to offer [proof of subjective reliance by each investor], and to require it would thwart and frustrate the public purposes of FTC action.  This is not a private fraud action, but a government action brought to deter unfair and deceptive trade practices and obtain restitution on behalf of a large class of defrauded investors.  It would be inconsistent with the statutory purpose for the court to require proof of subjective reliance by each individual consumer.

*Sec. Rare Coin & Bullion Corp.*, 931 F.2d at 1316.

[39]*Freecom Commc'ns, Inc.*, 401 F.3d at 1203 n.7.  Under Section 5, misrepresentations of material fact need not be made with intent to deceive; good faith does not immunize the advertiser from responsibility.  *F.T.C. v. World Travel Vacation Brokers, Inc.*, 861 F.2d 1020, 1029 (7th Cir. 1988).  "[O]nce the FTC shows (1) that a reasonably prudent person would rely on the deceptive advertisements, (2) that these advertisements were widely disseminated, and (3) that consumers purchased the product, '[t]he burden then shifts to the defendants to prove that the representations were not relied upon by the consumers.'" *Id.*

affecting commerce, and unfair or deceptive acts or practices in or affecting commerce."[40]

> To be actionable under section 5, these misrepresentations or
> practices need not be made with an intent to deceive. Indeed, "[a]n
> advertiser's good faith does not immunize it from responsibility for
> its misrepresentations . . . ." Moreover, the omission of material
> information, even if an advertisement does not contain falsehoods,
> may cause the advertisement to violate section 5.[41]

The Tenth Circuit explained,

> [A] violation of Section 5(a) of the FTC Act based upon deceptive
> acts or practices requires a showing of the following elements: 1) a
> representation, omission or practice; 2) that is likely to mislead
> consumers acting reasonably under the circumstances; and 3) that
> the representation, omission, or practice is material.[42]

Therefore, the Court declines to apply Rule 9(b) and will instead consider plaintiffs' FTC Act

claims under Rule 8(a).

In **Counts II** and **III**, plaintiffs allege defendants, in connection with the offering for sale

or sale of the grant research and writing services, represented "that Grand Writers Institute has a

70% success rate in obtaining grant funding for the consumers who purchase Defendants'

services," and that "consumers who purchase the ASI Defendants' goods and services are likely

to receive grant monies." Plaintiffs alleges these statements constitute a "deceptive act or

practice" because they are false, misleading, and unsubstantiated. The Court finds plaintiffs

have alleged sufficient facts to meet the notice-pleading standard of Rule 8(a), raising these

---

[40] 15 U.S.C. § 45(a)(1).

[41] *World Travel Vacation Brokers, Inc.*, 861 F.2d at 1029 (internal citations omitted); *see F.T.C. v. Figgie Int'l, Inc.*, 994 F.2d 595, 605–06 (9th Cir. 1993) ("A presumption of actual reliance arises once the Commission has proved that the defendant made material misrepresentations, that they were widely disseminated, and that consumers purchased the defendant's product.").

[42] *In re Abeyta*, 387 B.R. 846, 854 (Bkrtcy. D.N.M. 2008); *see F.T.C. v. Tashman*, 318 F.3d 1273, 1277 (11th Cir. 2003) (citing *World Travel Vacation Brokers, Inc.,* 861 F.2d at 1029; *F.T.C. v. Atlantex Assocs.,* 1987-2 Trade Cas. (CCH) ¶ 67,788 at 59,252, 1987 WL 20384 (S.D. Fla. 1987), *aff'd,* 872 F.2d 966 (11th Cir. 1989)).

claims to the level of plausibility. Therefore, defendants' motion to dismiss Counts II and III, brought under Section 5 of the FTC Act, is denied.

## 2. Telemarketing Act Claims

**Count IV** cites 16 C.F.R. § 310.3(a)(2)(iii) of the Telemarketing Act, which prohibits "deceptive telemarketing acts or practices." Under subsection (a)(2)(iii), it is a deceptive telemarketing act or practice for any seller or telemarketer to engage in the following: "[m]isrepresenting, directly or by implication, in the sale of goods or services any of the following material information: . . . (iii) [a]ny material aspect of the performance, efficacy, nature, or central characteristics of goods or services that are the subject of the sales offer."[43]

In **Count IV**, plaintiffs allege that defendants have misrepresented material facts in the course of telemarketing grant-related goods and services: (1) representing that consumers are guaranteed or highly likely to receive a $25,000 grant; (2) representing that Grant Writers Institute has a 70% success rate in obtaining grant funding for the consumers who purchase ASI Defendants' services; and (3) representing that consumers who use ASI Defendants' grant-related services are likely to receive grant monies. For the reasons explained by the Tenth Circuit above, the Court considers plaintiffs' claims in light of Rule 8(a). Because these facts are specific misrepresentations made by defendants in telemarketing specific goods—grant-related goods and services—plaintiffs have provided sufficient facts to go beyond "a formulaic recitation of the elements of the cause of action."[44] The Court finds plaintiffs have alleged a plausible claim for relief under Count IV and denies defendants' motion to dismiss Count IV.

---

[43]16 C.F.R. § 310.3(a)(2)(iii).

[44]*Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008).

### 3. North Carolina State Law Claims

In **Count XV**, plaintiffs allege a violation of N.C. Gen. Stat. § 75-1.1, which states that "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are declared unlawful."[45]  Plaintiffs allege that this statute was violated when defendants engaged in the "advertising, marketing, promoting, offering for sale and sale of grant-related goods and services" that included "misleading, false, and/or unsubstantiated" representations.[46]

At a minimum, to state a claim under the North Carolina Uniform and Deceptive Trade Practices Act, "a party must establish that (1) the defendant engaged in an 'unfair' or 'deceptive' act or practice; (2) the act was in or affecting commerce; and (3) the act injured the plaintiff."[47]  Plaintiff need not show fraud, bad faith, or intentional misrepresentation.[48]  Plaintiff need only "show that the acts complained of possessed the tendency or capacity to mislead, or created the likelihood of deception."[49]  Although "[p]roof of fraud would necessarily constitute an unfair or deceptive act or practice," "the converse is not always true."[50]

> Whether a trade practice is unfair or deceptive usually depends upon the facts of each case and the impact the practice has in the

---

[45]N.C. Gen. Stat. § 75-1.1(a).

[46]*See* Doc. 118 at 24.

[47]*Rutledge v. High Point Reg'l Health Sys.*, 558 F. Supp. 2d 611, 619 (M.D.N.C. 2008).

[48]*Id.*

[49]*In re Brokers*, 396 B.R. 146, 161 (Bkrtcy. M.D.N.C. 2008).

[50]*La Notte, Inc. v. New Way Gourmet, Inc.*, 350 S.E.2d 889, 892 (N.C. App. 1986); *Nw. Bank v. Roseman*, 344 S.E.2d 120, 126 (N.C. App. 1986) ("proof or fraud is not the only way to establish an unfair and deceptive act"); *Bernard v. Cent. Carolina Truck Sales, Inc.*, 314 S.E.2d 582, 583 (N.C. App. 1984) (noting that an action for unfair or deceptive acts or practices "is not an action for fraud").

> marketplace . . . . A practice is unfair when it offends established public policy as well as when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers. . . . [A] practice is deceptive if it has the capacity or tendency to deceive; proof of actual deception is not required.[51]

"Knowledge of the misrepresentation is not essential."[52] "[A]n action for unfair or deceptive acts or practices is a distinct action apart from fraud, breach of contract, or breach of warranty"; it is "a cause of action broader than traditional common law actions."[53] Furthermore, when the action is brought by the Attorney General, it is not necessary to show that actual injury has resulted.[54] Because fraud is not a necessary element of the statutory claim, North Carolina courts have found that a claim need only be pled in accordance with the state's Rule 12(b)(6) standards.[55] Accordingly, this Court applies Rule 8(a).

Plaintiffs' allegations, however, do not incorporate or reference the exhibits attached to the Amended Complaint. Because plaintiffs have alleged no facts beyond the statutory language, the Court finds they have alleged insufficient factual detail to state a plausible claim for relief under North Carolina's Unfair and Deceptive Trade Practices Act.

### 4. Illinois State Law Claims

"The Illinois Consumer Fraud Act 'is a regulatory and remedial statute intended to

---

[51]*La Notte,* 350 S.E.2d at 892 (quoting *Marshall v. Miller*, 276 S.E.2d 397, 403 (N.C. 1981)).

[52]*Bernard*, 314 S.E.2d at 583.

[53]*Id.*

[54]*State ex rel. Edmisten v. Challenge, Inc.*, 284 S.E.2d 333, 339 (N.C. App. 1981).

[55]*See, e.g., Bussian v. DaimlerChrysler Corp.*, 411 F. Supp. 2d 614, 617 (M.D. N.C. 2006); *CBP Res., Inc. v. SGS Control Servs. Inc.*, 394 F. Supp. 2d 733, 739–40 (M.D. N.C. 2005) (declining to extend Rule 9(b)'s coverage to claims under North Carolina's Chapter 75); *Rosenthal v. Perkins*, 257 S.E.2d 63, 67 (N.C. Ct. App. 1979).

protect consumers . . . against fraud, unfair methods of competition, and other unfair and deceptive business practices.'"[56]  In *Windy City Metal Frabricators & Supply, Inc. v. CIT Technology Financing Services, Inc.*,[57] the Seventh Circuit discussed whether a private claim brought under the ICFA was required to meet the Rule 9(b) heightened pleading standard.  The court distinguished between "unfair" practices and "deceptive" practices and held that, "[b]ecause neither fraud nor mistake is an element of unfair conduct under Illinois' Consumer Fraud Act, a cause of action for unfair practices under the Consumer Fraud Act need only meet the notice pleading standard of Rule 8(a), not the particularity requirement in Rule 9(b)."[58]

However, a public action may be different.  The ICFA declares unlawful "[u]nfair methods of competition and unfair or deceptive acts or practices . . . in the conduct of any trade or commerce . . ."[59]  "A deceptive practice violates the ICFA even if it doesn't actually deceive or injure anyone, . . .  and the Illinois Attorney General has the power to investigate and enjoin such a practice without a showing of actual loss, . . . "[60]  Thus, in a public action by the Attorney

---

[56]*Windy City Metal Frabricators & Supply, Inc. v. CIT Tech. Fin. Servs. Inc.*, 536 F.3d 663, 669 (7th Cir. 2008) (quoting *Robinson v. Toyota Motor Credit Corp.*, 775 N.E.2d 951, 960 (Ill. 2002)).

[57]536 F.3d 663 (7th Cir. 2008).

[58]*Id.* at 670; *see Siegel v. Shell Oil Co.*, 480 F. Supp. 2d 1034, 1043–45 & n.5 (N.D. Ill. 2007); *Recreation Servs. Inc. v. Odyssey Fun World, Inc.*, 952 F. Supp. 594, 599 (N.D. Ill. 1997) (holding that Rule 9(b) did not apply to claim brought under Fraud Act that did not allege traditional fraud).  In *Siegel*, the court held that, when a claim brought under the Consumer Fraud Act attempts to allege "averments of fraud," those claims should satisfy Rule 9(b).  *Id.* at 1043.  However, the court noted that "[t]he Consumer Fraud Act prohibits both 'unfair' and 'deceptive' practices, but neither claim *requires* proof of an intentional misrepresentation."  *Id.* at 1044 & n.5.  Thus, such claims generally need only meet the notice-pleading standard of Rule 8(a)).  *Id.* at 1043, 1045.

[59]815 ILCS 505/2.

[60]*Kim v. Carter's Inc.*, 598 F.3d 362, 365 (7th Cir. 2010) (citations omitted).

16

General brought under the ICFA, scienter, reliance and damages are not necessary elements.[61]

Furthermore, in construing § 505/2 of the Illinois Consumer Fraud and Deceptive Business Practices Act, "consideration shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to Section 5(a) of the Federal Trade Commission Act."[62]

Plaintiffs alleges defendants violated 815 I.L.C.S. 505/2.  The statute states,

> Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the "Uniform Deceptive Trade Practices Act", approved August 5, 1965, in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby.[63]

To prove a private cause of action, a plaintiff must prove "(1) a deceptive act or practice by the defendant, (2) the defendant's intent that the plaintiff rely on the deception, (3) the occurrence of the deception in the course of conduct involving trade or commerce, and (4) actual damage to the plaintiff (5) proximately caused by the deception."[64]  In an action brought by the

---

[61]*Duran v. Leslie Oldsmobile, Inc.*, 594 N.E.2d 1355, 1360–62 (Ill. App. 2 Dist. 1992) (noting the differences between common law fraud and statutory fraud under consumer protection laws); *see W. Ry. Devices Corp. v. Lusida Rubber Products, Inc.*, No. 06 c 0052, 2006 WL 1697119, at *6 (N.D. Ill. June 13, 2006) (noting that "[a]n action brought by the Attorney General under Section 2 of the ICFA does not require that 'any person has been misled, deceived or damaged'").

[62]815 I.L.C.S § 505/2.

[63]815 I.L.C.S. 505/2.

[64]*Mulligan v. QVC, Inc.*, 888 N.E.2d 1190 (Ill. App. 1st Dist. 2008) (quoting *Avery v. State Farm Mut. Auto. Ins. Co.*, 835 N.E.2d 801, 853 (Ill. 2005)).

Attorney General, however, scienter, reliance, or damages need not be proved.  In fact, a finding that defendant violated the Act, is a finding that defendant committed fraudulent or deceptive practices.[65]  Therefore, to state a claim under Section 2, "the Attorney General need allege only that: (1) a defendant is engaged in a trade or commerce, and (2) the defendant is engaged in unfair or deceptive acts or practices in the conduct of that trade or commerce."[66]  In light of such liberal pleading standards for the attorney general, this Court finds Rule 9(b) is inappropriate and will instead view plaintiffs' claims under Rule 8(a).

**Count XVII** alleges defendants violated this statute when, in connection with the offering for sale or sale of the grant research and writing services, they represented that "Grant Writers Institute has a 70% success rate in obtaining grant funding for the consumers who purchase the ASI Defendants' services."[67]  **Count XVIII** (sic) alleges there was a violation when defendants represented that "consumers who purchase the ASI Defendants' goods and services are likely to receive grant monies."[68]  Because intent, reliance, and damages are not elements in a public action brought by the Attorney General under Illinois' consumer protection law, the Court finds plaintiffs have stated a plausible claim for relief in Counts XVII and XVIII under Rule 8(a).

## 5.      Kansas State Law Claims

Upon the Court's review of Kansas cases brought under the KCPA, district courts have

---

[65] *People ex rel. Fahner v. Am. Buyers Club, Inc.*, 450 N.E.2d 904, 906 (Ill. App. 3 Dist. 1983).

[66] *People ex rel. Hartigan v. All Am. Aluminum & Const. Co.*, 524 N.E.2d 1067, 1071 (Ill. App. 1 Dist. 1988).

[67] *See* Doc. 118 at 25.

[68] *See id.*

consistently held that the Complaint/Petition must meet the higher pleading standard of Rule 9(b).[69]  However, as noted by defendant, none of these cases involved claims brought by the Attorney General to protect the public interest.  In fact, the Court could find no cases in which a Kansas court discussed whether the Attorney General should be held to a Rule 9(b) pleading standard when bringing claims under the KCPA.  However, in another context, the Kansas Court of Appeals explained the broad power of the Attorney General under the KCPA, and concluded that, for these reasons, the statute of limitations did not bar the action:

> The attorney general is granted broad investigatory and rule-making authority for the purpose of protecting the public from unscrupulous suppliers and is given the discretion to exercise these powers in a manner which will further the public interest. Furthermore, the attorney general is required to enforce the KCPA throughout the state and receive and act on complaints.  Thus, it is clear that the KCPA was enacted in the interest of the public generally.  Whether one consumer, ten or one hundred consumers, may receive actual damages as a result of a suit by the attorney general does not diminish the overall benefit to the state's interest in protecting consumers against deceptive and unconscionable acts and practices.
>
> In performing the duties required by the act, the attorney general acts in the interest of the state and for its benefit.  Furthermore, there is no express provision in the act subjecting the state to all defenses which would be available against a private consumer.[70]

Therefore, following the reasoning of the Tenth Circuit, this Court declines to impose upon the

---

[69]*See, e.g., Gonzalez v. Pepsico, Inc.*, 489 F. Supp. 2d 1233, 1247–48 (D. Kan. 2007); *Thompson v. Jiffy Lube Int'l, Inc.*, 505 F. Supp. 2d 907 (D. Kan. 2007) (applying Rule 9(b) to a private action under KCPA); *In re General Motors Corp.*, 385 F. Supp. 2d 1176, 1179–80 (W.D. Okla. 2005); *In re Universal Serv. Fund Tel. Billing Practices Litig.*, 300 F. Supp. 2d 1107, 1150 (D. Kan. 2003) (involving consumer class action in which district court held that "[t]he requirement of pleading fraud claims with particularity under Fed. R. Civ. P. 9(b) applies to allegations of deceptive trade practices under the KCPA."); *Burton v. R.J. Reynolds Tobacco Co.*, 884 F. Supp. 1515 (D. Kan. 1995) (applying Rule 9(b) to complaint in private action brought by individual plaintiff); *State of Kan. v. Brotherhood Bank & Trust Co.*, 649 P.2d 419, 420 (Kan. Ct. App. 1982) (noting that trial court denied defendant's motion to dismiss for failure to state a claim in case brought by the attorney general).

[70]*Brotherhood Bank & Trust Co.,* 649 P.2d at 423–24 (internal citation omitted).

Attorney General the obligation of pleading "who, what, where, and when" when he or she brings a claim to protect the public interest.[71]

Plaintiffs have attached to the Amended Complaint multiple examples of violations of solicitations and advertisements that allegedly violate the KCPA. However, none of these exhibits are directly incorporated into the Counts alleging KCPA violations. If these exhibits had been incorporated into plaintiff's allegations against the defendants, they may have alleged plausible claims for relief with sufficient detail to put the defendants on notice of the claims against them. The Court reviews each count separately.

**Count VII** alleges that, in telemarketing grant-related goods and services, defendants represented that "the uses, benefits or characteristics of the ASI Defendants' goods and services have been proven or otherwise substantiated" even though defendants have not collected data to substantiate their representations, in violation of K.S.A. § 50-626(b)(1)(G). Section 50-626(a) prohibits suppliers from engaging in "any deceptive act or practice in connection with a consumer transaction," and provides:

> Deceptive acts and practices include . . . the following, each of which is declared to be a violation of this act, whether or not any consumer has in fact been misled:
>
> (1) Representations made knowingly or with reason to know that: . . . (G) use benefit, or characteristics of property or services has been proven or otherwise substantiated unless the supplier relied upon and possesses the type and amount of proof of substantiation represented to exist.[72]

The Count does not specify what "uses, benefits or characteristics" were being represented to the

---

[71]*Id.* at 420 (noting that when defendant moved to dismiss for failure to state a claim upon which relief may be granted against a complaint filed by the attorney general, the trial court denied the motion).

[72]K.S.A. § 50-626(b)(1)(G).

public.  Thus, the Court finds that this Count fails to meet Rule 8(a) pleading as it is nothing more than conclusory allegations of the elements of the cause of action without setting forth any facts upon which to support a plausible claim for relief under this specific statute.

**Count VIII** alleges that, in the course of telemarketing grant-related goods and services, defendants "charged Kansas consumers' credit cards, for the purchase of the Grant Guide, prior to receiving signed confirmations from these consumers disclosing in full the terms of the transaction" in violation of K.S.A. § 50-675(b).  **Count IX** makes identical allegations with regard to the sale of "grant-related services."  Section 50-675(b) makes it an unconscionable act to "attempt to collect fee, or enforce a credit card charge or transaction . . . in violation of this act," and K.S.A. § 50-672(c) requires telemarketers to send a confirmation disclosing in full the terms of the sale to the consumer and receive the signed confirmation from the consumer before the agreement to purchase any goods or services will be considered valid and binding.[73]

Here, plaintiffs allege the Primary Defendants violated the rights of Kansas consumers who purchased defendant's Grant Guide and grant-related services by failing to give full disclosure of the terms of the sale and failing to obtain a signed confirmation from the consumers prior to charging their credit card accounts.  The Court finds that the allegations in Counts VIII and IX present a plausible claim for relief that goes above the mere elements of the cause of action.  The Amendment Complaint sets forth the object of the purchases and alleges the absence of any signed confirmation from consumers.  Thus, these counts set forth a plausible claim for violations of these statutes.

**Count X** alleges that defendants solicited "elder persons" — consumers over 60 years of

---

[73]K.S.A. § 50-672.

age — "in the course of telemarketing grant-related goods and services." Plaintiffs allege this is a violation of K.S.A. § 50-677. However, K.S.A. § 50-677 is only relevant if plaintiff alleges a violation of the KCPA with respect to consumers over 60 years of age. Plaintiffs have not alleged any facts in Count X showing a plausible violation of the Kansas Consumer Protection Act and have not incorporated any other Counts by reference.[74] Furthermore, although plaintiffs allege the conduct of the defendants "caused" elders to lose a principal source of income, lose property set aside for retirement, and/or lose assets essential for health and welfare, they have not pled any facts regarding the conduct that allegedly "caused" the losses or violated the KCPA. Thus, to the extent plaintiffs believe there was a violation of the KCPA with respect to elder persons, they have failed to allege sufficient facts demonstrating a plausible claim for relief in Count X.

### 6. Minnesota State Law Claims

Generally, to state a claim under the Minnesota Prevention of Consumer Fraud Act or the Minnesota Uniform Deceptive Trade Practices Act, a "plaintiff need only plead that the defendant engaged in conduct prohibited by the statutes and that the plaintiff was damaged thereby."[75] When the Attorney General brings claims under Minnesota's misrepresentation in sales statutes, the complaint need not plead reliance and the Attorney General need not prove damages.[76] In fact, when a plaintiff's damages are allegedly caused by "a lengthy course of

---

[74] *See* Fed. R. Civ. P. 10(c) ("**Adoption by Reference; Exhibits.** A statement in a pleading may be adopted by reference elsewhere in the same pleading or in any other pleading or motion. A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

[75] *Ford Motor Credit Co. v. Majors*, No. A04-1468, 2005 WL 1021551, at *3 (Minn. App. 2005).

[76] *Group Health Plan, Inc. v. Philip Morris Inc.*, 621 N.W.2d 2, 12 (Minn. 2001) ("[T]o state a claim that any of the substantive statutes has been violated, the plaintiff need only plead that the defendant engaged in conduct prohibited by the statutes and that the plaintiff was damaged thereby. Allegations that the plaintiff relied on the

prohibited conduct that affected a large number of consumers, direct evidence of reliance by individual consumers [is] not required."[77]  However, "[n]otwithstanding the relative breadth of the consumer protection statutes," Minnesota courts have held that "Rule 9(b) applies, . . . [when] the gravaman of the complaint is fraud."[78]

Similar to Kansas, Minnesota courts have imposed on private parties the obligation of pleading consumer protection claims with particularity under Rule 9(b).[79]  But no court has specifically held that this same standard applies to the Attorney General bringing a public action to enforce the State's consumer protection statutes.[80]  This Court also declines to impose such a standard.  Therefore, the Court will review plaintiffs' Amendment Complaint under the notice-pleading standard of Rule 8(a).

---

defendant's conduct are not required to plead a violation.").  In *Group Health* the court was analyzing Minn. Stat. 325F.67, 325F.69, subd. 1, and 325D.13.  Although defendant must intend that its conduct be relied upon, reliance by the victim is not necessary for a violation to occur.  *Id.*  Although the plaintiff in *Group Health* was a private party, *State by Humphrey v. Alpine Air Prods., Inc.*, 500 N.W.2d 788, 790 (Minn. 1993), was brought by the Attorney General, wherein the Minnesota Supreme Court noted that, "In passing consumer fraud statutes, the legislature clearly intended to make it easier to sue for consumer fraud than it had been to sue for fraud at common law.  The legislature's intent is evidenced by the elimination of elements of common law fraud, such as proof of damages or reliance on misrepresentations." *Id.*

[77]*Weigand v. Walser Auto. Groups, Inc*., 683 N.W.2d 807, 811 (Minn. 2004).

[78]*Tuttle v. Lorillard Tobacco Co.*, 118 F. Supp. 2d 954, 963 (D. Minn. 2000); *Russo v. NCS Pearson, Inc.*, 462 F. Supp. 2d 981, 1003 (D. Minn. 2006).

[79]*See, e.g., Drobnak v. Andersen Corp.*, 561 F.3d 778, 783 (8th Cir. 2009) (applying Rule 9(b) to a class action); *Kinetic Co. v. Medtronic, Inc.*, 672 F. Supp. 2d 933, 944 (D. Minn. 2009); *Russo v. NCS Pearson, Inc.*, 462 F. Supp. 2d 981, 1003 (D. Minn. 2006) (applying Rule 9(b) to Minnesota statutory claims where "the gravamen of the complaint is fraud"); *Carlson v. A.L.S. Enter., Inc.*, Civ. No. 07-3980 (RJK/JSM), 2008 WL 185710, at *2–3 (D. Minn. Jan. 18, 2008).

[80]*See State of Minn. v. Fleet Mortgage Corp.*, 158 F. Supp. 2d 962, 965–66 (D. Minn. 2001) (applying Rule 12(b)(6) and Rule 8 standards to a motion to dismiss brought against the Attorney General).  Minnesota permits private persons to bring actions under the Private Attorney General Act, but still requires them to plead with particularity.  However, a private attorney general action is based, in part, upon the legitimacy of plaintiff's allegations and the existence of a public benefit.  *See Peterson-Price v. U.S. Bank Nat'l Ass'n*, Civil No. 09-495 ADM/JSM, 2010 WL 1782188, at *13 (D. Minn. May 4, 2010).  Therefore, because a Private Attorney General has a specific claim for relief, this Court does not find it sufficiently analogous to a public action by a State Attorney General to warrant imposing heightened pleading upon the Attorney General as well.

In **Count XI**, plaintiffs allege a violation of Minnesota Statute § 325D.44, subdivisions

1(2), (3), (5) and (13), which read:

> A person engages in a deceptive trade practice when, in the course
> of business, vocation, or occupation, the person: . . .
>
> (2) causes likelihood of confusion or of misunderstanding as to the
> source, sponsorship, approval, or certification of goods or services;
> (3) causes likelihood of confusion or misunderstanding as to the
> affiliation, connection, or association with, or certification by,
> another; . . . (5) represents that goods or services have sponsorship,
> approval, characteristics, ingredients, uses, benefits, or quantities
> that they do not have or that a person has a sponsorship, approval,
> status, affiliation, or connection that the person does not have; . . .
> or (13) engages in any other conduct which similarly creates a
> likelihood of confusion or of misunderstanding.[81]

The complainant need not prove "actual confusion or misunderstanding."[82] **Count XII** alleges a

violation of Minnesota Statute § 325F.67, which states,

> Any person, firm, corporation, or association who, with intent to
> sell or in anywise dispose of merchandise, securities, service, or
> anything offered by such person, firm, corporation, or association,
> directly or indirectly, to the public, for sale or distribution, or with
> intent to increase the consumption thereof, or to induce the public
> in any manner to enter into any obligation relating thereto, or to
> acquire title thereto, or any interest therein, makes, publishes,
> disseminates, circulates, or places before the public, or causes,
> directly or indirectly, to be made, published, disseminated,
> circulated, or placed before the public, in this state, in a newspaper
> or other publication, or in the form of a book, notice, handbill,
> poster, bill, label, price tag, circular, pamphlet, program, or letter,
> or over any radio or television station, or in any other way, an
> advertisement of any sort regarding merchandise, securities,
> service, or anything so offered to the public, for use, consumption,
> purchase, or sale, which advertisement contains any material
> assertion, representation, or statement of fact which is untrue,
> deceptive, or misleading, shall, whether or not pecuniary or other

---

[81]Minn. Stat. § 325D.44, subd. 1(2), (3), (5), (13) (2004).

[82]Minn. Stat. § 325D.44, subd. 2.

specific damage to any person occurs as a direct result thereof, be guilty of a misdemeanor, and any such act is declared to be a public nuisance and may be enjoined as such.[83]

In **Count XIII**, plaintiff alleges a violation of Minnesota Statute § 325F.69, subdivision 1, which prohibits the following:

> The act, use, or employment by any person of any fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with the intent that others rely thereon in connection with the sale of any merchandise, whether or not any person has in fact been misled, deceived, or damaged thereby, is enjoinable as provided in section 325F.70.[84]

Finally, **Count XIV** alleges a violation of Minnesota Statute 325F.71, subd. 2, which provides that a person who engages in any conduct prohibited as deceptive trade practices (including § 325D.44), false advertising (including § 325F.67), and consumer fraud (including 325F.69), and whose conduct is perpetrated against one or more senior citizens or disabled persons, is liable for an additional civil penalty not to exceed $10,000 for each violation, if one or more factors are present.[85]

---

[83]Minn. Stat. § 325F.67 (2004). "'Merchandise' means any objects, wares, goods, commodities, real estate, loans, or services." *Id.* § 325F.68, subd. 2. "'Sale' means any sale, offer for sale, or attempt to sell any merchandise for any consideration." *Id.* subd. 4.

[84]Minn. Stat. § 325F.69, subd. 1.

[85]Minnesota Statute § 325F.71, subdivision 2, lists the following four factors:

> (1) whether the defendant knew or should have known that the defendant's conduct was directed to one or more senior citizens or disabled persons;

> (2) whether the defendant's conduct caused senior citizens or disabled persons to suffer: loss or encumbrance of a primary residence, principal employment, or source of income; substantial loss of property set aside for retirement or for personal or family care and maintenance; substantial loss of payments received under a pension or retirement plan or a government benefits program; or assets essential to the health or welfare of the senior citizen or disabled person;

Upon reviewing Counts XI, XII, XIII, and XIV in the Amended Complaint, the Court finds that the allegations are nothing more than recitations of the Minnesota statutes with no more factual content than to state that these violations occurred "[i]n numerous instances, in connection with . . . the sale of grant-related goods and services."[86] A formulaic recitation of the elements of a cause of action is exactly what Rule 8(a) is designed to prevent. Therefore, the Court finds Counts XI, XII, XIII, and XIV lack any factual content that would make such claims plausible.

## IV.    Leave to Amend

Finally, plaintiffs request leave to amend the Amended Complaint if any of their claims should warrant dismissal. Effective December 1, 2009, Rule 15(a) of the Federal Rules of Civil Procedure was amended to permit a plaintiff to amend a pleading as a matter of course within twenty-one days of service of a responsive pleading or motion under Rule 12(b).[87] After twenty-one days, the plaintiff must obtain leave to amend.[88] The Rule directs the Court to "freely give leave when justice so requires."[89] The Court notes that, although plaintiffs' Amended Complaint

---

(3) whether one or more senior citizens or disabled persons are more vulnerable to the defendant's conduct than other members of the public because of age, poor health or infirmity, impaired understanding, restricted mobility, or disability, and actually suffered physical, emotional, or economic damage resulting from the defendant's conduct; or

(4) whether the defendant's conduct caused senior citizens or disabled persons to make an uncompensated asset transfer that resulted in the person being found ineligible for medical assistance.

[86]*See* Doc. 118 at 21–23.

[87]Fed. R. Civ. P. 15(a)(1)(B).

[88]Fed. R.Civ. P. 15(a)(2).

[89]*Id.*.

is deficient in many respects, plaintiffs have produced and argued numerous additional facts in the TRO hearing and in exhibits attached to the Amended Complaint. However those facts are not sufficiently incorporated into the Counts identified by defendants. Based on the allegations made at various points throughout this case, the Court finds it possible that plaintiffs could plead facts that might cure the deficiencies in their Amended Complaint. Furthermore, although the case has progressed, the deadlines for the pretrial order and other dispositive motions is not yet passed. Thus, the Court finds it is in the interests of justice to exercise the discretion provided in Rule 15(a) to grant plaintiffs leave to amend the Amended Complaint to conform the pleading to the standards of Rule 8(a). Plaintiffs shall file any Second Amended Complaint no later than June 25, 2010.

**IT IS THEREFORE ORDERED** that defendants' Motion to Dismiss Amended Complaint (Doc. 124) is denied without prejudice. With respect to Counts II, III, IV, VIII, IX, XVII, and XVIII, the Court finds that plaintiffs have stated plausible claims for relief and defendants' motion is denied. With respect to Counts VII, X, XI, XII, XIII, XIV, and XV, defendants' motion is denied without prejudice. Plaintiffs shall file any Second Amended Complaint **no later than June 25, 2010.**

**IT IS SO ORDERED.**

Dated: June 4, 2010

 S/ Julie A. Robinson
JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE