# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| FEDERAL TRADE COMMISSION, *et al.*, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Case No. 09-4104-JAR |
| | ) |
| AFFILIATE STRATEGIES, INC., *et al.*, | ) |
| | ) |
| Defendants. | ) |

## **ORDER**

This matter comes before the Court upon Plaintiff Federal Trade Commission's Second Motion to Compel Defendant Wealth Power Systems, LLC to Produce Documents (ECF No. 295). The motion is fully briefed, and the Court is prepared to rule. For the reasons discussed below, Plaintiff Federal Trade Commission's Second Motion to Compel Defendant Wealth Power Systems, LLC to Produce Documents (ECF No. 295) is granted in part and denied in part.

### I. Procedural Requirement to Confer

Before considering the merits of the instant motion to compel, this Court must determine whether Plaintiff Federal Trade Commission ("Plaintiff" or "FTC") has complied with the requirements of the Federal Rules of Civil Procedure and this district's local rules regarding the movant's duty to confer with opposing counsel prior to filing a motion to compel. Fed. R. Civ. P. 37(a)(1) provides that a motion to compel "must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." D. Kan. R. 37.2 expands on the movant's duty to confer, stating "[a] 'reasonable effort to confer' means more than mailing or faxing a letter

to the opposing party. It requires that the parties in good faith converse, confer, compare views, consult and deliberate, or in good faith attempt to do so."

In this case, the parties have exchanged detailed correspondence aimed at attempting to resolve the instant discovery dispute without judicial intervention. The Court finds the FTC has satisfied the conference requirements embodied in Fed. R. Civ. P. 37(a)(1) and D. Kan. R. 37.2.

**II.     Background**

On July 19, 2009, Plaintiffs filed a Complaint alleging Affiliate Strategies, Inc. ("Affiliate Strategies"), Landmark Publishing Group, L.L.C. ("Landmark Publishing"), Grant Writers Institute, L.L.C. ("GWI"), Answer Customers, LLC ("Answer Customers"), Apex Holdings International, L.L.C. ("Apex Holdings"), Brett Blackman ("Blackman"), Jordan Sevy ("Sevy"), and James Rulison ("Rulison") (collectively referred to as the "ASI Defendants") violated the Federal Trade Commission Act ("FTC Act"), the FTC's Telemarketing Sales Rule ("TSR"), and various state consumer protection statutes prohibiting unfair and deceptive trade practices.[1] On December 9, 2009, Plaintiffs filed an Amended Complaint, which named five new defendants, including Aria Financial Services, Inc. ("Aria"), Wealth Power Systems, LLC ("WPS"), and Justin Ely.[2] On June 21, 2010, Plaintiffs filed a Second Amended Complaint.[3]

In their Second Amended Complaint, Plaintiffs assert Defendants engaged in a plan, program, or campaign to deceptively market and sell grant related goods and services to consumers throughout the United States. The scheme purportedly worked as follows: the ASI Defendants

---

[1] Compl., ECF No. 1.

[2] Am. Compl., ECF No. 118.

[3] Second Am. Compl., ECF No. 216.

mass-mailed postcards and flyers containing the following language: "You are Guaranteed a $25,000 Grant from the U.S. Government."[4] The flyers instructed consumers to call a telephone number to collect on the grant.[5] When consumers called the telephone number, they heard a voice recording guaranteeing a $25,000 grant if they purchased a grant guide.[6] At the end of the recording, the consumers were connected to a telemarketer who urged them to purchase the grant guide for $59 plus $10 in shipping and handling.[7] When a consumer purchased a grant guide, the ASI Defendants placed his or her information on a lead list, which it sent to telemarketers, such as WPS, to market additional grant-related services and up-sell additional products and services.

On April 30, 2010, the FTC served its First Set of Requests for Production of Documents upon WPS.[8] On June 1, 2010, counsel for WPS filed an unopposed motion to extend the deadline in which to respond until June 11, 2010, which was granted by this Court.[9] On June 11, 2010, WPS served its initial responses to the FTC's discovery requests, objecting on a variety of grounds.[10]

---

[4] *Id.* ¶¶ 37–38.

[5] *Id.* ¶ 39.

[6] *Id.*

[7] *Id.* ¶ 40.

[8] ECF No. 174. The FTC sought 84 categories of documents from WPS. Pl. FTC's Mot. to Compel Def. Wealth Power Systems, LLC to Produce Docs., Attach. 2, ECF No. 257-1.

[9] ECF Nos. 195–196.

[10] Pl. FTC's Mot. to Compel Def. Wealth Power Systems, LLC to Produce Docs., Attach. 3, ECF No. 257-1.

On July 6, 2010, the FTC offered to narrow the discovery requests directed at WPS by eliminating Request Nos. 16, 23–24, 33–36, 45–46, 69–74, and 76–81.[11] The FTC also offered to limit the scope of the remaining requests to documents that "relate to the sale of grant guides, grant research services, and grant writing services, and any upsells or cross-sells to consumer leads generated by the sale of grant guides, grant research services, or grant writing services, including but not limited to tax-related services (as defined for you below) and non-grant related services sold on behalf of the ASI Defendants such as the Business Credit Infusion."[12] On July 8, 2010, WPS's counsel accepted the FTC's proposal to narrow the document requests and provided its first supplemental responses.[13] WPS made subsequent productions of documents to the FTC in July and August.

On September 29, 2010, the FTC deposed WPS pursuant to Fed. R. Civ. P. 30(b)(6). During the course of the deposition, WPS's designated witnesses testified about the existence of documents that WPS purportedly had not produced. After the deposition, WPS agreed to supplement its production.[14] On October 15, 2010, the FTC received the balance of WPS's supplemental production. The FTC contends this production is deficient because WPS did not produce the following categories of documents referenced during its deposition: (1) scripts and/or recordings of statements made to consumers as part of WPS's "compliance" procedures; (2) documents showing payments to Defendant Meggie Chapman; (3) refund documentation and settlement agreements with

---

[11] Mem. in Opp'n to Pl. FTC's Second Mot. to Compel, Ex. 1, ECF No. 299-1.

[12] *Id*.

[13] Pl. FTC's Second Mot. to Compel Def. Wealth Power Systems, LLC to Produce Docs., Ex. 1, ECF No. 295-1 and Ex. 2, ECF No. 295-2.

[14] *Id.*, Ex. 4, ECF No. 295-4.

customers; (4) personnel records; (5) customer testimonials; and (6) employee handbooks and/or policies. In the instant motion, the FTC seeks an order compelling WPS to produce all documents responsive to these categories of documents.

**III.    Analysis**

    A.    <u>Scripts and Recordings</u>

Request for Production Nos. 3, 17–19 seek (1) all recordings verifying consumers' purchases of the goods or services marketed and sold by WPS;[15] (2) all telemarketing scripts and drafts thereof;[16] and (3) documents sufficient to show when the telemarketing scripts were used.[17] In its first supplemental responses served on July 8, 2010, WPS indicated it was producing or had already produced all non-privileged responsive documents in its possession.[18]

During the 30(b)(6) deposition of WPS, one of its designated representatives, Brian McAdam, testified that WPS has a three step compliance program whereby (1) a sales representative is required to read a statement to the consumer confirming that the sales representative has not made any representations and guarantees to the consumer and that the consumer understands what he is prepared to purchase; (2) the compliance department reads a script to the consumer, confirming that no representations or guarantees have been made, and also records the conversation; and (3) WPS sends documents to the consumer that recite the terms and conditions of the consumer's purchase

---

[15] *Id.*, Ex. 2 (Req. for Produc. No. 3), ECF No. 295-2.

[16] *Id.* (Req. for Produc. Nos. 17–18).

[17] *Id.* (Req. for Produc. No. 19).

[18] *Id*.

and that require the consumer's signature.[19] As part of the first step described above, Mr. McAdam testified that the sales representative is asked to "initial" the statement, which indicates the statement was read verbatim to the consumer.[20]

The FTC contends WPS has not produced any statements initialed by sales representatives. In its opposition to the current motion, WPS contends it has produced all "scripts" pursuant to the discovery requests as narrowed.

Generally, a response that a party has no additional responsive documents suggests judicial involvement is unnecessary.[21] However, it is somewhat odd that WPS has not produced any statements initialed by sales representatives in light of Mr. McAdam's testimony that this is a part of WPS's compliance procedure. WPS has not explained why it has not produced any statements or explained the process by which it searched for responsive documents. As a result, the Court cannot determine whether the documents have not produced because they simply no longer exist or because WPS has not fulfilled its obligations under Fed. R. Civ. P. 34 to conduct a reasonable search

---

[19] WPS 30(b)(6) Dep. 53:7–54:9, ECF No. 295-3.

[20] WPS 30(b)(6) Dep. 53:15–17, ECF No. 295-3.

[21] *See Coffeyville Res. Refining & Mktg. v. Liberty Surplus Ins. Corp.*, No. 08-1204-WEB, 2009 WL 950811, at *1 (D. Kan. Apr. 7, 2009).

for responsive documents.[22] Further, it is not clear that WPS's representation that it has produced all "scripts" is meant to encompass the statements initialed by its sales representatives.

Accordingly, WPS is ordered to produce all documents responsive to Request for Production Nos. 17–19 as narrowed. If no further documents exist, WPS shall so indicate expressly in a supplemental response and also confirm it has conducted a reasonable search of the records in its possession, custody, or control.

The FTC also contends WPS has not produced all of the recordings of its compliance department, which are responsive to Request for Production No. 3. As part of its post-deposition production, WPS apparently agreed to produce additional recordings. In its October 15, 2010 supplemental production, WPS produced additional consumer files containing recordings. The FTC, however, contends WPS's production was deficient because (1) only some of the additional consumer files contained a verification recording and (2) the recordings that were produced consisted of "corrupted" files that the FTC could not play on its computers.

---

[22] *See Jacobson v. Starbucks Coffee Co.*, No. 05-1338-JTM, 2006 WL 3146349, at *2 (D. Kan. Oct. 31, 2006) (requiring a party to conduct a reasonable search for documents responsive to requests for production); *Finkelstein v. D.C.*, No. 85-2616, 1987 WL 14976, at *6 (D.D.C. July 22, 1987) (suggesting that Fed. R. Civ. P. 34 contemplates that a party will conduct a diligent search through all likely repositories of records); *Walker v. THI of N.M. at Hobbs Ctr.*, No. 09-0060 JB/RLP, 2010 WL 552661, at *12 (D.N.M. Feb. 8, 2010) (ordering party responding to discovery request to conduct a diligent search for responsive documents); *Cache La Poudre Feeds, LLC v. Land O'Lakes, Inc.*, 244 F.R.D. 614, 626 (D. Colo. 2007) (indicating that Rule 34 imposes an affirmative duty to seek information reasonably available through a party's employees, agents, and others subject to its control); *A. Farber & Partners, Inc. v. Garber*, 234 F.R.D. 186, 189 (C.D. Cal. 2006) (stating that a party has an obligation to conduct a reasonable inquiry in the course of responding to requests for production); *see also In re Independent Serv. Orgs. Antitrust Litig.*, 168 F.R.D. 651, 653 (D. Kan. 1996) (a party cannot meet its discovery obligations by "sticking its head in the sand and refusing to look for the answers and then saying it does not know the answer").

The FTC argues WPS should have compliance recordings for all of its customers based upon Mr. McAdam's testimony. As discussed above, Mr. McAdam testified that the compliance department reads a script verbatim to its consumers and also records the conversation. This, however, does not necessarily mean that WPS has retained all of those recordings, and the parties dispute whether WPS was required to do so under the applicable Federal regulations. Mr. McAdam never testified that all of the recordings had been retained.

In its Opposition, WPS contends it has produced all responsive compliance department recordings, and the Court does not have sufficient evidence to conclude otherwise. Unlike the statements purportedly initialed by WPS's sales representatives discussed above, WPS has produced some responsive materials. WPS's counsel is an officer of the court, and without further evidence to the contrary, the undersigned will accept counsel's representation that all responsive recordings have been produced.[23]

The FTC also indicates that the few recordings produced consisted of "corrupted" wav files. The FTC contends there is "no doubt" this is a WPS production issue within WPS's power to address because WPS has produced usable audio files in its past productions, the FTC cannot play the files on its computers, and the FTC has sought internal technical assistance to no avail. WPS indicates it has produced the files on two separate occasions. On the second occasion, WPS

---

[23] *See Guidance Endodontics, LLC v. Dentsply Int'l, Inc.*, No. 08-1101 JB/RLP, 2010 WL 965528, at *2 (D.N.M. Feb. 26, 2010) (declining to compel further production based upon defendants' representation that they had no responsive documents); *Thompson v. Rios*, No. 07-cv-00025-PAB-KLM, 2008 WL 5101030, at *1 (D. Colo. Nov. 26, 2008) (accepting that defendants had conducted requisite search of their files and produced responsive documents based upon defense counsel's representation, as an officer of the court, that his clients had no further responsive documents in their possession).

contends it produced the recordings by following the procedures that counsel for the FTC indicated were necessary to enable the FTC to listen to the files.

Fed. R. Civ. P. 34(b)(2)(E)(ii) requires a party to produce electronically stored information in the form in which it is ordinarily maintained or in a reasonably usable form. Based upon what has been presented to it, the Court cannot conclude that WPS has failed to meet this obligation. Neither party addresses how WPS ordinarily maintains the recordings on its computers or whether this differs from what was produced. Further, it is not clear to the Court that this is a WPS production problem. The Court has no information on why the files cannot be played by the FTC or the steps involved in correcting the purported problem. It would be helpful to know the process used by WPS to produce the files, whether this process was different than the process previously used to produce accessible recordings, how and when the files became "corrupted," and whether it is possible to produce the files in another format. Without this information, the Court cannot conclude that WPS should be compelled to re-produce the files in a different manner and/or format.

The parties should be able to resolve this issue without judicial intervention. Accordingly, the Court directs the parties to further meet and confer on this issue.

  B. <u>Documents Evidencing Payments to Meggie Chapman</u>

Request for Production No. 39 seeks "Documents Sufficient to Show money or other compensation paid or transferred by You to any other Defendant for the calendar year 2009." Request for Production No. 40 seeks "Documents Sufficient to Show money or other compensation paid or transferred by You to any other Defendant for the period from January 1, 2010 through the date of full and complete compliance with this Request for Production of Documents." During the 30(b)(6) deposition of WPS, Mr. McAdam testified that WPS made payments to Defendant Meggie

Chapman in 2009 and 2010. The FTC contends it has received no documentation for any payments, including documentation of payments to Defendant Chapman.

As previously discussed, the parties agreed the FTC's requests would be narrowed to documents that, "relate to the sale of grant guides, grant research services, and grant writing services, and any upsells or cross-sells to consumer leads generated by the sale of grant guides, grant research services, or grant writing services, including but not limited to tax-related services . . . and non-grant related services sold on behalf of the ASI Defendants such as the Business Credit Infusion." WPS contends the phrase "sold on behalf of the ASI Defendants" modifies the entire paragraph agreed to by the parties. As a result, WPS contends it agreed to produce only grant-related documents relating to the ASI Defendants. WPS argues the payments discussed by Mr. McAdam during WPS's deposition are not responsive because they do not relate to payments made to Defendant Chapman "as a result of sales to leads generated by the ASI Defendants."

The FTC disputes WPS's interpretation of the parties' agreement and believes the phrase "sold on behalf of the ASI Defendants" modifies only the immediately preceding phrase "tax-related services and non-grant related services." The FTC argues that payments made to any other Defendant for providing grant research services are responsive to its requests, even if not the result of leads generated from the ASI Defendants.

The Court is not in a position to ascertain what the parties believed was the scope of their agreement to narrow the discovery requests. For purposes of this motion, the FTC is seeking to compel documents under its interpretation of the parties' agreement, which is within the scope of

its initial Requests for Production. Accordingly, the Court will analyze the request as interpreted by the FTC, and consider any objections lodged by WPS.[24]

In its Opposition, WPS argues the FTC's original requests were "overbroad" and abusive but does not elaborate further. Unless a request is overly broad on its face, the party resisting discovery has the burden to support its over breadth objection.[25] The Court does not find the requests as interpreted by the FTC to be overly broad. Accordingly, WPS has not sustained its burden to support its over breadth objection.

Further, it is possible that at least some payments made to Meggie Chapman from August 2009 through October 2009 were a "result of sales to leads generated by the ASI Defendants," such that they are responsive even under WPS's interpretation. For example, WPS appears to have made sales from leads generated by the ASI Defendants at least through October 2009[26] and began to pay Meggie Chapman directly for the fulfillment services she provided to consumers in August 2009.[27]

Accordingly, WPS is ordered to produce all documents responsive to Request for Production Nos. 39–40 as narrowed under the FTC's interpretation. If no further responsive documents exist,

---

[24] When a party files a motion to compel, the objecting party must specifically show in its response to the motion to compel how each request for production or interrogatory is objectionable. *Sonnino v. Univ. of Kan. Hosp. Auth.*, 221 F.R.D. 661, 670–71 (D. Kan. 2004). By failing to address the objections in response to a motion to compel, a party fails to meet its burden to support its objections. *Id.* at 671. "Objections initially raised but not relied upon in response to the motion to compel will be deemed abandoned." *Cardenas v. Dorel Juvenile Group, Inc.*, 232 F.R.D. 377, 380 n.15 (D. Kan. 2005) (citing *Sonnino*, 220 F.R.D. at 641); *Cotracom Commodity Trading Co. v. Seaboard Corp.*, 189 F.R.D. 655, 662 (D. Kan. 1999).

[25] *Swackhammer v. Sprint Corp. PCS*, 225 F.R.D. 658, 661 (D. Kan. 2004).

[26] Mem. in Supp. of Pls.' Mot. for Summ. J. 36 ¶ 194, ECF No. 316; Mem. in Opp'n to Pl. FTC's Mot. for Summ. J. 23 ¶ 194, ECF No. 324.

[27] Mem. in Supp. of Pls.' Mot. for Summ. J. 36 ¶ 197, ECF No. 316; Mem. in Opp'n to Pl. FTC's Mot. for Summ. J. 24 ¶ 197, ECF No. 324.

WPS shall so indicate in a supplemental response and also confirm it has conducted a reasonable search of the records in its possession, custody, or control.

      C.      <u>Refund Information and Consumer Settlement Agreements</u>

Request for Production No. 4 seeks documents identifying each consumer that requested a refund, the basis for the request, the amount refunded, whether the refund was granted, and the basis for any denials.[28] Request for Production Nos. 5–8 seek documents relating to consumer complaints.[29] In its first supplemental responses, WPS indicated it was producing non-privileged responsive documents.

During the 30(b)(6) deposition of WPS, Mr. McAdam identified additional types of documents relating to refunds and consumer complaints that purportedly had not been produced to the FTC. For example, Mr. McAdam testified that WPS sent documentation to consumers verifying refund conversations and requiring the customers to sign and return the documents to receive a refund.[30] Mr. McAdam indicated he was "sure we have copies of some of them."[31] Mr. McAdam also testified that a document previously produced to the FTC was a summary of refunds issued by WPS, and indicated that WPS "[a]bsolutely" still had additional documents relating to each refund.[32]

After the deposition, WPS supplemented its production to provide additional refund information from January 2009 through April 2010. WPS also provided information regarding

---

[28] Pl. FTC's Second Mot. to Compel Def. Wealth Power Systems, LLC to Produce Docs., Ex. 2, ECF No. 295-2.

[29] *Id*.

[30] WPS 30(b)(6) Dep. 89:17–90:8, ECF No. 295-3.

[31] WPS 30(b)(6) Dep. 90:1–8, ECF No. 295-3.

[32] WPS 30(b)(6) Dep. 153:4–154:20, ECF No. 295-3.

"chargebacks" from March through August 2009.[33]  According to the FTC, the parties agreed that the relevant time period was November 2008 through 2010.  Thus, the FTC seeks production of refund and "chargeback" information for the missing time periods or a verification that no such information exists.  The FTC also indicates WPS has produced none of the signed agreements about which Mr. McAdam testified during WPS's deposition.

In its Opposition, WPS indicates it has produced customer files responsive to the FTC's requests, and that any customer information would be found in those files.  It is difficult for the Court to accept WPS's statement that all responsive documents would be located in the customer files previously produced because it appears that WPS's post-deposition production of the refund and "chargeback" information was not contained within those files.  Further, WPS does not address whether it has any of the signed refund agreements referenced by Mr. McAdam during WPS's deposition.  It is somewhat odd that no such agreements have been produced in light of Mr. McAdam's testimony he was "sure" WPS had some of them.

Accordingly, WPS is ordered to produce all documents responsive to Request for Production Nos. 4–8 as narrowed.  If no further responsive documents exist, WPS shall so indicate expressly in a supplemental response and also confirm it has conducted a reasonable search of the records in its possession, custody, or control.

### D. Personnel Records Showing Dates of Employment and Discipline

Request for Production Nos. 21-22, 53 and 59 seek (1) documents related to the discipline or termination of WPS telemarketers in connection with their use, misuse, or non-use of telemarketing sales, verification and customer service scripts; (2) documents identifying WPS's

---

[33] WPS has not explained why it did not produce these documents until October 15, 2010.

employees, dates of employment, job title, and job duties or job description; and (3) documents related to the creation and termination of contracts with independent contractors.[34]

As part of its first production, WPS purportedly produced only a blank independent contractor sheet. On October 15, 2010, WPS made a supplemental production that included completed independent contractor agreements and initial W-9 forms.[35] The FTC contends the supplemental production is still incomplete because it does not include any documents showing the dates during which the independent contractors worked for WPS, when their employment ceased, whether they were subject to discipline, or the basis for the creation and termination of their contracts with WPS.

In its Opposition, WPS indicates it has produced all personal files for those contractors with whom WPS had a contract during the time period in question. WPS indicates any and all information regarding those contractors is contained within those files and that there is no additional documentation regarding the relationship with those contractors beyond that which is contained in the personnel files.

The absence of certain categories of documents, such as disciplinary records, is not necessarily suspect. It is possible that WPS did not discipline any telemarketers or terminate their employment for their use, misuse, or non-use of telemarketing scripts as described in Request for Production No. 53. It is more problematic that are purportedly no records showing when the independent contractors' employment ceased, and the Court questions whether there are sources of

---

[34] Pl. FTC's Second Mot. to Compel Def. Wealth Power Systems, LLC to Produce Docs., Ex. 2, ECF No. 295-2.

[35] WPS has not explained why it did not produce these documents until October 15, 2010.

documents beyond than the personnel files that could contain this information, such as WPS's payroll records.

Accordingly, WPS is ordered to produce all documents responsive to Request for Production Nos. 21-22, 53, and 59 as narrowed. If no further responsive documents exist, WPS shall so indicate in a supplemental response and also confirm it has conducted a reasonable search of the records in its possession, custody, or control.

### E. Testimonials of Consumers Who Received Grants

Request for Production Nos. 47–50 seek documents identifying each consumer who received a grant after purchasing grant-related services, the source and amounts of such grants, and/or documents relating to the success of any consumers in obtaining grants.[36] In its first supplemental responses, WPS indicated it was unaware of any responsive documents.[37] During WPS's deposition, however, Mr. McAdam testified that he knew of individuals who received grants and that those individuals "provided us testimonials and actually have thanked us for helping them in getting grants."[38] Mr. McAdam indicated he "believed" at least one of the letters still existed but he would have to do some "digging" to try to find it.[39] In its post-deposition production, WPS did not produce any such letters or testimonials. In the instant motion, the FTC seeks an order directing WPS to produce these documents or identify them in the production.

---

[36] *Id*.

[37] *Id*.

[38] WPS 30(b)(6) Dep. 166:19–167:5, ECF No. 295-3.

[39] WPS 30(b)(6) Dep. 168:7–15, ECF No. 295-3.

Based upon Mr. McAdam's testimony, it is not clear to the Court that any testimonials from customers still exist. WPS indicates that to the extent any such letters exist, they would be included in the customer files that have already been produced. The Court, however, is not convinced WPS has conducted a reasonable search of its records for the letters. During the 30(b)(6) deposition of WPS, Mr. McAdam testified he believed the letter "came into our customer service department, so it was either Bruce or Deric or Cindi" who told him about the letter.[40] A search for any responsive documents should, at a minimum, involve inquiring of the individuals within the customer service department if they have a copy of any testimonials or where they are located. Based upon what has been presented to it, the Court cannot determine whether this has been done.

Accordingly, WPS is ordered to produce all documents responsive to Request for Production Nos. 47–50 as narrowed. If no further responsive documents exist, WPS shall so indicate in a supplemental response and also confirm it has conducted a reasonable search of the records in its possession, custody, or control.

F. <u>Employee Compliance Handbook And/Or Policies and Procedures</u>

Requests for Production Nos. 56 and 58 seek all documents relating to policies and procedures of WPS, including policies and procedures relating to the telemarketing of goods and services.[41] In response to these requests, WPS purportedly produced a blank independent contractor agreement and indicated it was not aware of any other responsive documents. In a supplemental response, WPS produced a policy statement on complaints, refund requests, and cancellations. During the deposition of WPS, Mr. McAdam indicated that individuals who work in WPS's

---

[40] *Id.*

[41] Pl. FTC's Second Mot. to Compel Def. Wealth Power Systems, LLC to Produce Docs., Ex. 2, ECF No. 295-2.

customer service department receive a policy and procedure document consisting of "loose sheets" that include documents beyond those produced, including "extension lists, phone extension lists, procedure on the fulfillment packet, what needs to be included in that fulfillment packet, of course, the compliance script."[42] The FTC indicates WPS agreed but failed to produce any additional policy documentation in its October 15, 2010 supplemental production.

WPS indicates it believes it has produced all responsive documents but "will search again for any material that would have been used during the time period in question."[43] Mr. McAdam indicated there are only a handful of policy documents so a search of WPS's files and WPS's employee work areas for any responsive policy documents should be relatively easy to accomplish. If no further responsive documents exist, WPS shall so indicate in a supplemental response and also confirm it has conducted a reasonable search of the records in its possession, custody, or control.

Accordingly,

**IT IS THEREFORE ORDERED** that Plaintiff Federal Trade Commission's Second Motion to Compel Defendant Wealth Power Systems, LLC to Produce Documents (ECF No. 295). is hereby granted in part and denied in part as described herein. All responsive documents shall be produced to Plaintiff on or before February 9, 2011.

If no further responsive documents exist, by February 9, 2011, WPS shall so indicate in a supplemental response with respect to each category of documents sought, and also confirm it has

---

[42] WPS 30(b)(6) Dep. 182:21–183:9, ECF No. 295-3.

[43] The temporal scope of these requests is January 1, 2005 to the present, unless the parties have previously agreed to narrow the temporal scope of these requests. Pl. FTC's Second Mot. to Compel Def. Wealth Power Systems, LLC to Produce Docs., Ex. 2 at 11, ECF No. 295-2.

conducted a reasonable search of the records in its possession, custody, or control. This should include a description of WPS's efforts to search for responsive documents.

**IT IS SO ORDERED.**

Dated this 26th day of January, 2011, at Topeka, Kansas.

s/ K. Gary Sebelius  
K. Gary Sebelius  
U.S. Magistrate Judge