**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

FEDERAL TRADE COMMISSION, *et al.*,       )
                                          )
                    Plaintiffs,           )
                                          )
v.                                        )        Case No. 09-4104-JAR
                                          )
AFFILIATE STRATEGIES, INC., *et al.*,     )
                                          )
                    Defendants.           )

## ORDER

This matter comes before the Court upon Plaintiff Federal Trade Commission's Motion for

Sanctions Against Defendants Aria Financial Services, LLC and Wealth Power Systems, LLC for

Violating Order to Produce Documents (ECF No. 306). The motion is fully briefed, and the Court

is prepared to rule. For the reasons discussed below, Plaintiff Federal Trade Commission's motion

for sanctions is granted in part and denied in part.

## I.      Background

On July 20, 2009, Plaintiffs filed a Complaint alleging Affiliate Strategies, Inc., Landmark

Publishing Group, L.L.C., Grant Writers Institute, L.L.C., Answer Customers, LLC, Apex Holdings

International, L.L.C. (collectively referred to as the "ASI Defendants" or "Kansas Defendants"),

Brett Blackman, Jordan Sevy, James Rulison, Real Estate Buyers Financial Network LLC, Martin

Nossov, and Alicia Nossov violated the Federal Trade Commission Act, the FTC's Telemarketing

Sales Rule, and various state consumer protection statutes prohibiting unfair and deceptive trade

practices.[1]  On December 9, 2009, Plaintiffs filed an Amended Complaint, which named five new

_____

[1] Compl., ECF No. 1.

defendants, including Aria Financial Services, LLC ("Aria"), Wealth Power Systems, LLC ("WPS"), and Justin Ely.[2]  On June 21, 2010, Plaintiffs filed a Second Amended Complaint.[3]

In their Second Amended Complaint, Plaintiffs assert Defendants engaged in a plan, program, or campaign to deceptively market and sell grant related goods and services to consumers throughout the United States.  The scheme purportedly worked as follows: the ASI Defendants mass-mailed postcards and flyers containing the following language: "You are Guaranteed a $25,000 Grant from the U.S. Government."[4]  The flyers instructed consumers to call a telephone number to collect on the grant.[5]  When consumers called the telephone number, they heard a voice recording guaranteeing a $25,000 grant if they purchased a grant guide.[6]  At the end of the recording, the consumers were connected to a telemarketer who urged them to purchase the grant guide for $59 plus $10 in shipping and handling.[7]  When a consumer purchased a grant guide, the ASI Defendants placed his or her information on a lead list, which it sent to telemarketers, such as WPS and Aria, to market additional grant-related services and up-sell additional products and services.

On April 30, 2010, Plaintiff Federal Trade Commission ("Plaintiff" or "FTC") served its First Set of Requests for Production of Documents upon WPS and Aria.[8]  On June 1, 2010, counsel

---

[2] Am. Compl., ECF No. 118.

[3] Second Am. Compl., ECF No. 216.

[4] *Id.* ¶¶ 37–38.

[5] *Id.* ¶ 39.

[6] *Id.*

[7] *Id.* ¶ 40.

[8] Notice of Service, ECF Nos. 173–74.

for WPS and Aria filed an unopposed motion to extend the deadline in which to respond until June 11, 2010, which was granted by this Court.[9]  On June 11, 2010, Aria and WPS served their respective responses to the discovery requests, objecting on a variety of grounds.[10]  The FTC contends WPS produced only two documents in response to the requests and that Aria refused to produce any documents.

On July 6, 2010, the FTC offered to narrow the discovery requests served on Aria by eliminating Request Nos. 15, 22–23, 32–35, 44–45, 63–68, and 70–75.[11]  The FTC offered to narrow the discovery requests directed at WPS by eliminating Request Nos. 16, 23–24, 33–36, 45–46, 69–74, and 76–81.[12]  The FTC also offered to limit the scope of the remaining requests to documents that "relate to the sale of grant guides, grant research services, and grant writing services, and any upsells or cross-sells to consumer leads generated by the sale of grant guides, grant research services, or grant writing services, including but not limited to tax-related services (as defined for you below) and non-grant related services sold on behalf of the ASI Defendants such as the Business Credit Infusion."[13]

## II.  Analysis

### A.  WPS

---

[9] ECF Nos. 195–196.

[10] Aria's Resps. to Reqs. for Produc. from Pl. FTC, ECF No. 235-1; WPS's Resps. to Reqs. for Produc. from Pl. FTC, ECF No. 257-1.

[11] Email from Sara DePaul to Micah Bruner and Phillip Gragson (July 6, 2010), ECF No. 235-1.

[12] *Id.*

[13] *Id.*

On July 8, 2010, defense counsel accepted the FTC's proposal to narrow the documents request with respect to WPS only.[14] The FTC later discovered that WPS, after learning of this litigation, destroyed certain documents that would have been responsive to the FTC's requests for production. On August 4, 2010, as a prerequisite for filing a motion for spoliation sanctions pursuant to Fed. R. Civ. P. 37, the FTC sought an order compelling WPS to produce the destroyed documents.[15] In response to that motion, WPS conceded it destroyed paper copies of lead sheets submitted by Justin Ely, but denied destroying any other documents. WPS also argued it maintained a digital copy of every lead sheet submitted by Justin Ely and that it had produced the digital copies of the destroyed lead sheets. The FTC responded it was unable to locate any documents in WPS's production that matched the description of an electronic lead sheet.

WPS never raised or attempted to support any objection to producing the hard copy lead sheets, including relevance. As a result, the Court found that the lead sheets received from Mr. Ely were responsive to Request for Production Nos. 21–22, 55, 68, 75–76 and facially relevant to the FTC's claims in this case. On October 26, 2010, the Court granted the FTC's motion in part and ordered WPS to: (1) produce by November 2, 2010 all hard copy lead sheets submitted by Justin Ely; and (2) provide the FTC with a supplemental response indicating where the electronic versions of the lead sheets were located within WPS's production or to produce them by November 2, 2010.[16]

---

[14] Email from Micah Bruner to Sara DePaul (July 8, 2010), ECF No. 235-1.

[15] Pl. FTC's Mot. to Compel Def. WPS to Produc. Docs., ECF No. 257.

[16] Order, ECF No. 292.

WPS has confirmed it cannot produce the hard copy lead sheets that were destroyed and thus, cannot comply with this Court's October 26, 2010 Order.[17] The FTC now seeks an order imposing sanctions pursuant to Fed. R. Civ. P. 37 for WPS's destruction of documents and failure to comply with this Court's Order.

1.    Spoliation

Spoliation is the "'destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation.'"[18] A litigant has a duty to preserve evidence that it knows or should know is relevant to imminent or ongoing litigation.[19] Most commonly, a party is deemed to have notice of pending litigation if the party has received a discovery request, a complaint has been filed, or any time a party receives notification that litigation is likely to be commenced.[20]

Once a party reasonably anticipates litigation, it must suspend its routine document retention/destruction policy and put in place a litigation hold to ensure the preservation of relevant documents.[21] It is not enough for a litigant to merely implement a litigation hold, however.[22] Counsel for the litigant must also oversee compliance with the hold by monitoring the litigant's

---

[17] WPS's Resps. to Reqs. for Produc. from Pl. FTC, ECF No. 306-2.

[18] *School-Link Techs., Inc. v. Applied Res., Inc.*, No. 05-2088-JWL, 2007 WL 677647, at *3 (D. Kan. Feb. 28, 2007) (quoting *Zubulake v. UBS Warburg LLC*, 229 F.R.D. 422, 430 (S.D.N.Y. 2004)).

[19] *Workman v. AB Electrolux Corp.*, No. 03-4195-JAR, 2005 WL 1896246, at *5 (D. Kan. Aug. 8, 2005).

[20] *Oxford House, Inc. v. City of Topeka*, No. 06-4004-RDR, 2007 WL 1246200, at *3 (D. Kan. Apr. 27, 2007) (internal citations omitted).

[21] *School-Link Techs., Inc.*, 2007 WL 677647, at *4 (citing *Zubulake*, 229 F.R.D. at 431).

[22] *Id.* at *5.

"efforts to retain and produce the relevant documents."[23] Counsel must communicate with the litigant to ensure "(1) that all sources of relevant information [are] discovered, (2) that relevant information is retained on a continuing basis; and (3) that relevant non-privileged material is produced to the opposing party."[24] A litigant's duty to preserve evidence extends to electronically stored information.[25]

Where a party violates an order to preserve evidence or, as here, fails to comply with an order compelling discovery because it has destroyed evidence, it is subject to sanctions under Fed. R. Civ. P. 37.[26] As the moving party, the FTC has the burden to demonstrate spoliation by a preponderance of the evidence.[27] Spoliation sanctions are proper when (1) a party has a duty to preserve evidence because it knew, or should have known, that litigation was imminent; and (2) the adverse party was prejudiced by the destruction of the evidence.[28] As to the second factor, there must be evidence that the moving party was actually, not merely theoretically, prejudiced.[29]

WPS does not dispute it had a duty to preserve evidence at the time it destroyed the hard copy lead sheets. In her declaration, Ms. Paulsen states, "After learning of the pending litigation, I instructed the sales staff to return all lead sheets with lead codes indicating that the leads were

---

[23] *Id.*

[24] *Id.*

[25] *In re Krause,* 367 B.R. 740, 764 (Bankr. D. Kan. 2007).

[26] *In re WRT Energy Sec. Litig.*, 246 F.R.D. 185, 194 (S.D.N.Y. 2007).

[27] *In re Krause,* 367 B.R. at 764.

[28] *Burlington N. & Santa Fe Ry. Co. v. Grant*, 505 F.3d 1013, 1032 (10th Cir. 2007).

[29] *Turner v. Pub. Serv. Co. of Colo.*, 563 F.3d 1136, 1150 (10th Cir. 2009).

given to Wealth Power Systems by Justin Ely from Landmark Publishing."[30]  Similarly, Brian McAdam, the President and Chief Executive Officer of WPS, states, "After Wealth Power Systems learned of the pending litigation, I ensured that the salesmen's paper copies of lead sheets . . . were destroyed to ensure that the leads were not called by Wealth Power Systems' sales staff."[31]  Deric Gurley, Vice President of WPS, also confirmed that the paper lead sheets were destroyed after WPS learned of this litigation.[32]

Notwithstanding that it had a duty to preserve the hard copy lead sheets, WPS contends the FTC was not prejudiced by WPS's destruction of the documents.  WPS argues the hard copy lead sheets are not responsive to the FTC's discovery requests because they did not relate to "actual sales."  WPS believes it is unlikely any sales were actually consummated because the sales copies were destroyed.  Although the purported purpose in pulling the lead sheets was to prevent sales calls from being made, this does not necessarily mean WPS was successful in doing so, and WPS has presented no evidence to substantiate this claim.

This also highlights a disagreement between the parties about the scope of the narrowed discovery requests.  As previously discussed, the parties agreed the FTC's requests would be narrowed to documents that, "relate to the sale of grant guides, grant research services, and grant writing services, and any upsells or cross-sells to consumer leads generated by the sale of grant guides, grant research services, or grant writing services, including but not limited to tax-related services . . . and non-grant related services *sold* on behalf of the ASI Defendants such as the

---

[30] Paulsen Decl. ¶ 7, ECF No. 265-4.

[31] McAdam Decl. ¶ 15, ECF No. 265-2.

[32] Gurley Decl. ¶¶ 13, 16, ECF No. 265-3.

Business Credit Infusion."  WPS contends the phrase "sold on behalf of the ASI Defendants" modifies the entire paragraph agreed to by the parties.  Thus, WPS argues the destroyed documents were not responsive because no "sale" was actually completed.

The FTC disputes WPS's interpretation of the parties' agreement and believes the phrase "sold on behalf of the ASI Defendants" modifies only the immediately preceding phrase "tax-related services and non-grant related services."  If WPS believed the destroyed documents were not responsive to the FTC's document requests, then it should have raised this argument in response to the FTC's motion to compel when the Court considered the issue.  The Court rejects this belated attempt to raise this issue.[33]

WPS also argues the FTC is not prejudiced because any hard copy lead sheets that resulted in sales would have been located in the customer files produced.  In a supplemental response to the FTC, WPS contends that "documents pertaining to sales completed to any customer whose information was given to Wealth Power Systems by Justin Ely would have been scanned into the customer files and have therefore been produced . . . Wealth Power Systems believes that those paper copies, as potentially altered by any handwritten notes from WPS's marketers, have been scanned and saved to the customer files."[34]  The Court has difficulty crediting these statements because WPS has never previously raised this issue.  None of the declarations submitted in opposition to the FTC's prior motion to compel referred to the hard copy lead sheets being scanned into the customer files. WPS has not provided a single example of a scanned lead sheet that was

---

[33] "Objections initially raised but not relied upon in response to the motion to compel will be deemed abandoned." *Cardenas v. Dorel Juvenile Grp., Inc*., 232 F.R.D. 377, 380 n.15 (D. Kan. 2005); *Cotracom Commodity Trading Co. v. Seaboard Corp*., 189 F.R.D. 655, 662 (D. Kan. 1999).

[34] WPS's Resps. to Reqs. for Produc. from Pl. FTC, ECF No. 306-2.

produced as part of the customer files. Further, as discussed above, the FTC's requests are not limited to only those situations in which a sale was actually made. Accordingly, the Court rejects this argument.

The FTC argues this Court has already recognized destruction of the documents prejudiced the FTC. This is not entirely accurate. In its prior order, the Court rejected WPS's argument that production of the digital copies of the lead sheets was sufficient because the Court agreed with the FTC that the hard copy lead sheets might have contained handwritten notes or other annotations made by WPS's sales team that would not appear on the electronic copies. Relevance is broadly construed at the discovery stage of litigation, and a "request for discovery should be considered relevant if there is 'any possibility' that the information sought may be relevant to the claim or defense of any party."[35] The Court had little difficulty in concluding the hard copy sheets were relevant because it was *possible* they contained handwritten notes. Determining that the hard copy lead sheets might contain relevant information for purposes of a motion to compel, however, is not the same as determining the FTC was *actually* prejudiced by the non-production of these documents. Although a party cannot show prejudice without showing relevance,[36] proof of relevance does not necessarily equate to proof of prejudice.[37] Where more severe sanctions are sought, such as an adverse inference instruction, courts in other jurisdictions have required a higher showing of

_____

[35] *Sheldon v. Vermonty*, 204 F.R.D. 679, 689 (D. Kan. 2001) (quoting *Scott v. Leavenworth Unified Sch. Dist. No. 453*, 190 F.R.D. 583, 585 (D. Kan. 1999)).

[36] *Henning v. Union Pac. R.R. Co.*, 530 F.3d 1206, 1220 (10th Cir. 2008).

[37] *Pension Comm. of the Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC*, 685 F. Supp. 2d 456, 467 (S.D.N.Y. 2010).

relevance; specifically, the party moving for sanctions must demonstrate the destroyed evidence would have been favorable to it.[38]

There is little Tenth Circuit authority discussing what constitutes "actual prejudice." Further, it is not easy to determine who should bear the burden of establishing relevance and who should be required to prove the absence of the missing material caused prejudice to the innocent party.[39] As the Southern District of New York has stated:

> This is not an easy question. It is often impossible to know what lost documents would have contained. At best, their content can be inferred from existing documents or recalled during depositions. But this is not always possible.
>
> . . . .
>
> While requiring the innocent party to demonstrate the relevance of information that it can never review may seem unfair, the party seeking relief has some obligation to make a showing of relevance and eventually prejudice, lest litigation become a "gotcha" game rather than a full and fair opportunity to air the merits of a dispute. If a presumption of relevance and prejudice were awarded to every party who can show that an adversary failed to produce a document, even if such failure is completely inadvertent, the incentive to find such error and capitalize on it would be overwhelming.[40]

The Court is also mindful that the burden placed on the moving party for sanctions should not be too onerous, "lest the spoliator be permitted to profit from its destruction" of documents.[41]

---

[38] *Zubulake v. UBS Warburg LLC*, 229 F.R.D. 422, 431 (S.D.N.Y. 2004); *In re WRT Energy Sec. Litig.*, 246 F.R.D. 185, 197 (S.D.N.Y. 2007) (demonstrating that a showing beyond mere relevance is required).

[39] *See Pension Comm. of the Univ. of Montreal Pension Plan*, 685 F. Supp. 2d at 466–68.

[40] *Id.*

[41] *In re WRT Energy Sec. Litig.*, 246 F.R.D. at 197.

The FTC argues it was prejudiced because WPS has no other record of the representations it made to customers during sales calls. The FTC's argument requires the Court to assume that (1) the hard copy lead sheets contained handwritten notes made by WPS's sales staff *and* (2) any such notes reflected representations made by WPS's staff during sales calls. Although the Court agrees that the hard copy lead sheets might have contained handwritten notes, it is too great of a leap to assume that any such notes contained representations made by WPS's sales staff. The FTC has not submitted any evidence, such as deposition testimony of WPS's sales staff, to support this assertion, and the Court is reluctant to base a finding of actual prejudice upon such speculation. Further, any prejudice is somewhat minimized because the FTC can still establish the representations made by WPS's sales staff through testimony from WPS's customers. On the record before it at this time, the Court cannot find the FTC was actually prejudiced by WPS's destruction of the hard copy lead sheets.

2.      Sanctions

As a sanction for WPS's spoliation, the FTC seeks an adverse inference instruction that the destroyed lead sheets would have been damaging to WPS. Even assuming the FTC was actually prejudiced, the Court would not impose this sanction because there is insufficient evidence that WPS acted in bad faith.[42]

Spoliation sanctions serve a remedial function by leveling the evidentiary playing field and restoring the prejudiced party to the position it would have been in without spoliation.[43] In striving to "level the playing field," there must be some reasonable relationship between the sanction

_____

[42] Some courts have found that evidence destroyed in bad faith is sufficient to demonstrate relevance and prejudice. *Zubulake*, 229 F.R.D. at 431.

[43] *See Mosaid Techs. Inc. v. Samsung Elecs. Co.*, 348 F. Supp. 2d 332, 335 (D.N.J. 2004).

-11-

imposed and the prejudice actually suffered by the moving party.[44]  Factors in determining an

appropriate sanction under Fed. R. Civ. P. 37 include: (1) the degree of actual prejudice to the

moving party; (2) the amount of interference with the judicial process; (3) the culpability of the non-

moving party; (4) whether the court warned the party in advance that a dispositive sanction would

be likely for non-compliance; and (5) the efficacy of lesser sanctions.[45]  "A court should impose the

least onerous sanction that will remedy the prejudice, punish the past wrongdoing, and deter future

wrongdoing."[46]

An adverse inference is a powerful sanction because it "brands one party as a bad actor."[47]

As a result, an adverse inference instruction is not warranted unless a showing of bad faith has been

made.[48]  Bad faith involves dishonest conduct and implies wrongdoing or some motive of self-

interest.[49]  Bad faith destruction of a document relevant to proof of an issue at trial gives rise to an

inference that production of the document would have been unfavorable to the party responsible for

---

[44] *See Larson v. Bank One Corp.*, No. 00 C 2100, 2005 WL 4652509, at *14 (N.D. Ill. Aug. 18, 2005); *In re WRT Energy Sec. Litig.*, 246 F.R.D. at 200 ("[I]n the process of leveling the playing field, care must be taken not to tilt it too far in favor of the party seeking sanctions."); *see also Ehrenhaus v. Reynolds*, 965 F.2d 916, 920–21 (10th Cir. 1992) ("The district court's discretion to choose a sanction is limited in that the chosen sanction must be both just and related to the particular claim which was at issue in the order to provide discovery.") (internal citations and quotations omitted).

[45] *Ehrenhaus*, 965 F.2d at 921.  Where a dispositive sanction is not at issue, only the first three factors are applicable.  *Id.*

[46] *In re Krause,* 367 B.R. 740, 770 (Bankr. D. Kan. 2007).

[47] *Henning v. Union Pac. R.R. Co.*, 530 F.3d 1206, 1219 (10th Cir. 2008) (internal citations omitted).

[48] *Id.* at 1220.

[49] *Cache La Poudre Feeds, LLC v. Land O'Lakes, Inc.*, 244 F.R.D. 614, 635 (D. Colo. 2007).

-12-

its destruction.[50]  However, mere negligence in losing or destroying records is not enough because "it does not support an inference of consciousness of a weak case."[51]

The FTC argues WPS's actions in intentionally destroying the lead sheets demonstrate bad faith.  To support that it did not act in bad faith, WPS has submitted affidavits from various executives explaining the lead sheets were destroyed to prevent WPS's sales force from calling those individuals listed in the lead sheets, not for any improper purpose.[52]  The FTC counters that WPS has not offered any explanation why collection and storage of the lead sheets, rather than shredding them, would have been insufficient.

There is good reason to be suspicious of WPS's conduct in shredding the lead sheets. Discovery of documents and information from WPS has not gone smoothly.  WPS admits that "from the outset, the discover[y] process was poorly handled."[53]  As will be discussed below, WPS also recently attached an exhibit to its Opposition to Plaintiffs' Motion for Summary Judgment that has never been produced in discovery.  It is also rather odd that WPS did not simply collect and remove the hard copy lead sheets from the sales floor, rather than shredding them.

Despite its concerns about WPS's conduct, the Court does not believe there is sufficient evidence to disregard the sworn declarations submitted by WPS.  There is no direct evidence contradicting the statements in the declarations.[54]  Whether WPS engaged in bad faith destruction

---

[50] *Aramburu v. Boeing Co.*, 112 F.3d 1398, 1407 (10th Cir. 1997).

[51] *Id.*

[52] Pauslen Decl. ¶ 8, ECF No. 265-4; McAdam Decl. ¶ 15, ECF No. 265-2; Gurley Decl. ¶ 13, ECF No. 265-3.

[53] Aria and WPS's Mem. in Further Supp. of Their Mot. for Summ. J. at 4, ECF No. 336.

[54] Further, it would have been helpful to know some additional facts surrounding the
(continued...)

turns on the credibility of the declarants, which is difficult for the Court to determine from the parties' briefs. In short, the Court does not have sufficient information at this time to conclude WPS engaged in bad faith spoliation of evidence.[55]

Alternatively, the FTC requests the Court find the documents were negligently destroyed and seeks a sanction precluding WPS from contesting consumer accounts of the sales calls for which WPS destroyed the hard copy lead sheets. In cases where an adverse inference instruction is neither requested nor appropriate, the Tenth Circuit has held that a finding of bad faith is not required to impose non-dispositive sanctions, such as excluding evidence.[56] Less severe sanctions may be awarded if the non-movant was merely negligent in losing or destroying the evidence in question.[57] Because the FTC has not demonstrated it was "actually" prejudiced, however, the Court will not impose a sanction for negligent destruction.

In response to the prior motion to compel, WPS represented it had produced a digital copy of all responsive lead sheets. The FTC, however, indicated it was unable to identify any documents matching the description of an electronic lead file in WPS's production. To clarify whether these documents had been produced, the Court directed WPS to provide a supplemental response indicating where the electronic versions of the lead sheets were located within WPS's production

---

[54](...continued)
destruction, including whether there was a litigation hold in place at the time the documents were shredded.

[55] The undersigned will leave it to the parties to address with the trial judge whether this is an issue that should be further explored prior to or during trial.

[56] *103 Investors I, L.P. v. Square D Co.*, 470 F.3d 985, 988–89 (10th Cir. 2006).

[57] *Henning v. Union Pac. R.R. Co.*, 530 F.3d 1206, 1220 (10th Cir. 2008).

(i.e. bates stamp) or to produce the lead sheets by November 2, 2010.[58]  In the instant motion, the FTC argues WPS violated this Court's order because it has not identified with any specificity where in the production the electronic versions of the lead sheets are located.[59]

In its supplemental responses, WPS states it provided a CD containing the customer files and that those customers files contain the lead sheets.[60]  The purpose of the Court's prior Order was to clarify whether digital versions of the hard copy lead sheets had been produced.  WPS's response does not help to resolve this issue.  Accordingly, WPS shall provide a supplemental response within seven (7) days of this Order providing the bates number of all electronic copies of the lead sheets that were produced.  If the documents were not bates numbered, WPS shall provide a separate production containing only the electronic copies of the lead sheets.  Failure to comply with this Order might result in sanctions being imposed upon WPS and/or its counsel.

B.     Exhibit 2 Attached to WPS and Aria's Opposition to FTC's Motion for Summary Judgment

In its reply to the instant motion, the FTC indicates WPS and Aria have attached an exhibit to their Opposition to Plaintiffs' Motion for Summary Judgment that was never produced in discovery by WPS and/or Aria.[61]  Exhibit 2 ("DX-2") is a record that purportedly gives sales guidance to telemarketers and warns against using certain phrases, sentences or concepts when making sales.  The document is essentially a "Do Not Say" list.  For example, the document instructs

---

[58] Order, ECF No. 292.

[59] The FTC does not seek any specific sanction for this purported violation of the Court's Order.

[60] WPS's Resps. to Reqs. for Produc. from Pl. FTC, ECF No. 306-2.

[61] Aria and WPS's Mem. in Opp'n to Mot. to Pl. FTC's Mot. for Summ. J., Ex. 2, ECF No. 324-1. Although not entirely clear, WPS appears to be the only entity relying upon this document in opposing the FTC's motion.

sales staff not to guarantee any customers would receive a grant. The FTC argues this document was responsive to Request for Production No. 58 directed at WPS, which requested all policy manuals and written guidelines relating to the telemarketing of goods or services. The FTC requests the Court strike the document as a matter of course pursuant to Fed. R. Civ. P. 37(c)(1).[62]

Fed. R. Civ. P 37(c)(1) states that "[i]f a party fails to provide information . . . as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 26(e) requires parties supplement their responses to requests for production "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process . . ."

Sanctions under Rule 37 are not automatic or self-executing.[63] The district court must first determine whether substantial justification exists for failing to make the required disclosure.[64] If the party who failed to make the required disclosure does not demonstrate substantial justification, the court must then determine whether the failure to disclose was harmless; the failure to disclose is harmless when there is no prejudice to the party entitled to the disclosure.[65] In determining harmlessness, a district court should consider: (1) the prejudice or surprise to the party against whom

---

[62] The Court would not normally entertain a request that was raised for the first time in a reply brief. However, WPS and Aria responded to this issue in their Memorandum in Further Support of Their Motion for Summary Judgment. Because WPS and Aria have had an opportunity to respond, the Court will rule on the FTC's requested relief.

[63] *Umbenhower v. Copart, Inc.*, No. 03-2476-JWL, 2004 WL 2660649, at * 4 (D. Kan. Nov. 19, 2004).

[64] *Burton v. R.J. Reynolds Tobacco Co*., 203 F.R.D. 636, 639 (D. Kan. 2001).

[65] *Id.*

the testimony is offered; (2) the ability of the party to cure the prejudice; (3) the extent to which introducing such testimony would disrupt the trial; and (4) the moving party's bad faith or wilfulness.[66] The burden to establish harmlessness is on the party who failed to make the required disclosure.[67]

As an initial matter, there does not appear to be any dispute that DX-2 is responsive to various FTC requests for production. Request for Production No. 58 directed at WPS seeks, "All policy manuals and written guidelines Relating To the Telemarketing of any and all goods or services . . ."[68] In its opposition to the FTC's motion for summary judgment, WPS refers to DX-2 as its "policy."

WPS has not offered any substantial justification for its failure to produce the document earlier. WPS merely indicates "it was believed that this document was part of the information provided to the Plaintiffs."[69]

Further, WPS has not demonstrated its failure to disclose DX-2 was harmless. On the contrary, the FTC has been prejudiced by WPS's failure to produce this document during discovery. WPS relies upon DX-2 to refute the FTC's proof that WPS violated the law and to demonstrate that WPS's business practices prohibit its sales staff from guaranteeing any grants or referring to the amount of money potential customers could receive from a grant. These are central issues in this case. Because this document was not produced during discovery, the FTC has been unable to

---

[66] *Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.*, 170 F.3d 985, 993 (10th Cir. 1999).

[67] *Burton*, 203 F.R.D. at 639.

[68] Pl. FTC's Second Mot. to Compel Def. WPS to Produc. Docs., Ex. 2, ECF No. 295-2.

[69] Aria and WPS's Mem. in Further Supp. of Their Mot. for Summ. J. at 5, ECF No. 336.

depose WPS about this document, including finding out who prepared the document, when it was prepared, how long it has purportedly been used, or why it was prepared, among other inquiries.

Under the second factor to consider, WPS could possibly ameliorate the prejudice to the FTC by making itself available for deposition (or other discovery devices) and bearing the costs of any such further discovery – provided this could occur before the trial judge rules on the FTC's pending summary judgment motion. However, the FTC would likely seek to supplement its summary judgment motion based upon the information learned in any further discovery. Re-opening discovery would delay resolution of the FTC's pending summary judgment motion and potentially disrupt the Court's August 22, 2011 trial date. Thus, prejudice to the FTC could only be cured by disrupting the trial of this case, which is the third factor for the Court to consider.

The Court is highly suspicious of WPS's conduct in not producing this document earlier. On November 15, 2010, the FTC moved to compel WPS to provide full responses to various discovery requests, including Request for Production No. 58.[70] In an opposition dated November 29, 2010, WPS represented to the Court that it believed it had produced all responsive documents but would search again for any responsive materials.[71] WPS made no further document productions. A month later, on December 27, 2010, WPS attached DX-2 to its opposition to the FTC's motion for summary judgment. It is difficult for the Court to understand how WPS could not have produced this document earlier if it had been acting in good faith and in keeping with its representations to this Court. Unlike the destruction of the hard copy lead sheets, WPS has not provided any adequate explanation for its conduct. For example, WPS does not describe with any

---

[70] Second Mot. to Compel, ECF No. 295.

[71] Mem. in Opp'n to Second Mot. to Compel, ECF No. 299.

detail why the document was not produced earlier, where it was found, or who found it. Based upon the facts before it, the Court concludes WPS has acted in bad faith by not producing this document previously.

After weighing the relevant considerations, the Court strikes DX-2 from the summary judgment record.

C.     Aria

As discussed above, on July 6, 2010, the FTC offered to narrow the discovery requests served on Aria by eliminating Request Nos. 15, 22–23, 32–35, 44–45, 63–68, and 70–75.[72] The FTC also offered to limit the scope of the remaining requests to documents that "relate to the sale of grant guides, grant research services, and grant writing services, and any upsells or cross-sells to consumer leads generated by the sale of grant guides, grant research services, or grant writing services, including but not limited to tax-related services (as defined for you below) and non-grant related services sold on behalf of the ASI Defendants such as the Business Credit Infusion."[73]

Defense counsel declined to accept the FTC's July 6, 2010 proposal because he contended Aria was not a proper party to the litigation and suggested sending to the FTC a copy of the goods and services offered by Aria to demonstrate that Aria does not sell grant-related services and should be dropped from the case.[74] On July 9, 2010, the FTC rejected defense counsel's suggestion and

---

[72] Email from Sara DePaul to Micah Bruner and Phillip Gragson (July 6, 2010), ECF No. 235-1.

[73] *Id.*

[74] Email from Micah Bruner to Sara DePaul (July 8, 2010), ECF No. 235-1.

provided defense counsel with correspondence between Justin Ely (purportedly on behalf of Aria) and Defendant Brett Blackman regarding the selling of grant-related goods.[75]

On July 10, 2010, the FTC moved for an order compelling Aria to produce all documents responsive to its requests for production. On July 12, 2010, Aria accepted the FTC's proposal to limit its discovery requests,[76] but the FTC did not withdraw its motion to compel.

On July 23, 2010, Aria served supplemental responses to Plaintiff's document production requests.[77] Aria objected to Request Nos. 1, 46, 54, 57, and 59 on various grounds.[78] Aria also objected to certain definitions and general instructions and lodged a series of "General Objections."[79] Aria then asserted it was producing non-privileged, responsive documents "[s]ubject to and without waiving any specific or general objections" in response to numerous requests.[80] Because Aria qualified its responses in this manner, it was not clear to the Court whether Aria was withholding any responsive documents based upon its objections. On October 26, 2010, the Court overruled Aria's objections and ordered Aria by November 2, 2010 to "produce all documents responsive to the FTC's requests for production, as narrowed" to the extent it had not done so.[81] The Court further ordered that "[i]f no further responsive documents exist, Aria shall so indicate for each request."[82]

---

[75] Email from Sara DePaul to Micah Bruner (July 9, 2010), ECF No. 235-1.

[76] Email from Micah Bruner to Sara DePaul (July 12, 2010), ECF No. 261-1.

[77] Aria's Supplemental Resps. to Reqs. for Produc. from Pl. FTC, ECF No. 261-1.

[78] *Id.*

[79] *Id.*

[80] *Id.*

[81] Order at 11–12, ECF No. 292.

[82] *Id.*

On December 10, 2010, Aria served its Second Supplement to its Responses to Requests for Production from Plaintiff Federal Trade Commission in which Aria indicates it has produced all responsive documents.[83]  In the instant motion, the FTC argues Aria has violated this Court's October 26, 2010 Order because Aria admitted, during its Rule 30(b)(6) deposition, the existence of responsive documents that have never been produced.  The FTC seeks sanctions against Aria for failing to comply with this Court's prior order.

### 1.    Scope of the FTC's Document Requests

The Court will first address an issue potentially affecting multiple discovery requests at issue.  After the FTC filed its motion to compel on July 10, 2010, the parties agreed to narrow the FTC's requests to documents that "relate to the sale of grant guides, grant research services, and grant writing services, and any upsells or cross-sells to consumer leads generated by the sale of grant guides, grant research services, or grant writing services, including but not limited to tax-related services . . . and non-grant related services sold on behalf of the ASI Defendants such as the Business Credit Infusion."[84]  Similar to WPS, Aria contends the phrase "sold on behalf of the ASI Defendants" modifies the entire paragraph agreed to by the parties.  As a result, Aria contends it agreed to produce only grant-related documents relating to the ASI Defendants.  The FTC disputes Aria's interpretation of the parties' agreement and believes the phrase "sold on behalf of the ASI Defendants" modifies only the immediately preceding phrase "tax-related services and non-grant related services."

---

[83] Notice of Service, ECF No. 304; Aria's Second Supplement to its Resps. to Reqs. for Produc. from Pl. FTC, ECF No. 306-3.

[84] Email from Sara DePaul to Micah Bruner and Phillip Gragson (July 6, 2010), ECF No. Doc. 235-1; Email from Micah Bruner to Sara DePaul (July 12, 2010), ECF No. 261-1.

It is difficult for the Court to determine what the parties believed was the scope of their agreement to narrow the discovery requests. This issue was not before the Court when it granted the FTC's motion to compel because it appears the parties had not yet discovered they disagreed over the scope of the requests. Because there appears to have been a good faith dispute over the scope of their agreement, the Court will not find Aria has violated this Court's Order by not producing documents responsive only under the FTC's interpretation of the requests.

However, Aria has been on notice of the FTC's interpretation of the requests prior to the filing of the instant motion and has not raised or supported any objections to the FTC's interpretation. Therefore, within seven (7) days of this Order, Aria shall make a supplemental production of documents responsive to the requests at issue in this motion in accordance with the FTC's interpretation. The Court will now address the specific discovery requests presented in the FTC's motion.

### 2. Scripts

Request for Production Nos. 16 and 17 seek all sales, telemarketing, verification and customer service scripts and any drafts thereof for telemarketing any and all goods and services.[85] During the September 30, 2010 Rule 30(b)(6) deposition of Aria, the designated witness, Brian McAdam, testified that Aria used sales scripts at one time and that he "believe[d] we could locate them."[86] In its Second Supplement served on December 10, 2010, Aria indicates it has produced all responsive documents in its possession or control.[87] The FTC contends Aria has not produced a single script or draft script. As a result, the FTC contends Aria has violated this Court's prior order

---

[85] Aria's Second Supplement to its Resps. to Reqs. for Produc. from Pl. FTC, ECF No. 306-3.

[86] Rule 30(b)(6) Dep. 69:22–75:2, ECF No. 306-4.

[87] Aria's Second Supplement to its Resps. to Reqs. for Produc. from Pl. FTC, ECF No. 306-3.

and seeks an order prohibiting Aria from contesting the testimony of customers regarding Aria's sales representations.

In its opposition, Aria indicates it has been unable to find any sales scripts "used during the period of time in question" despite Mr. McAdam's belief to the contrary. In its reply, the FTC argues Aria has engaged in spoliation. To support this argument, the FTC cites to deposition testimony that Aria received notification of the lawsuit in early August 2009 and continued selling services to the leads received from the ASI Defendants until mid-August 2009.[88] The FTC argues it is not plausible that in August 2009, Aria did not have a single script that its sales force used or was using when calling leads received from the ASI Defendants.

The Court agrees it is somewhat odd that Aria has not produced a single script used by its sales staff when calling leads from the ASI Defendants. The Court, however, does not believe the FTC has presented sufficient evidence to conclude Aria has engaged in spoliation. There is no evidence Aria destroyed scripts after it learned about the existence of this suit. Although Mr. McAdam testified scripts were used by Aria's callers, there is no evidence establishing when the scripts were used or for how long. There is simply no evidence that Aria was using a script in August 2009 when its purported duty to preserve the documents arose. The Court will not impose the rather harsh sanctions sought by the FTC based upon such speculation.

Aria's failure to produce any scripts used throughout the remainder of 2009 and 2010 can potentially be explained by the parties' disagreement over the scope of the documents to be produced.[89] Further, there is no evidence that Aria was using scripts during this time period.

---

[88] Rule 30(b)(6) Dep. 79:16– 84:4, ECF No. 332.

[89] Under Aria's interpretation, it agreed to produce only grant-related documents relating to
(continued...)

Generally, a response that a party has no additional responsive documents suggests judicial involvement is unnecessary.[90]  Here, Aria's conduct in responding to the FTC's discovery requests makes it somewhat difficult for the Court to credit its representations that all responsive documents have been produced.

Accordingly, within seven (7) days of this Order, Aria shall provide a supplemental production and response describing with specificity how and where it searched for responsive documents and affirmatively stating whether further responsive documents exist.  This is in addition to making a supplemental production in accordance with the FTC's interpretation of the requests.

Aria's counsel is also reminded of their obligation to communicate with Aria to ensure "(1) that all sources of relevant information [are] discovered, (2) that relevant information is retained on a continuing basis; and (3) that relevant non-privileged material is produced to the opposing party."[91]

### 3.    Financial Information

In various requests for production, the FTC requested (1) documents sufficient to show Aria's revenue and sales for calendar years 2007–2009; (2) documents sufficient to show Aria's revenues and sales from January 1, 2010 through completion of discovery; (3) documents that identify all refunds requested and granted; (4) documents relating to complaints about the ASI

---

[89](...continued)
the ASI Defendants.  Thus, any scripts used after August 2009 would not be responsive under Aria's interpretation because it had purportedly stopped selling to leads from the ASI Defendants.

[90] *See Coffeyville Res. Refining & Mktg. v. Liberty Surplus Ins. Corp.*, No. 08-1204-WEB, 2009 WL 950811, at *1 (D. Kan. Apr. 7, 2009).

[91] *See School-Link Techs., Inc. v. Applied Res., Inc.*, No. 05-2088-JWL, 2007 WL 677647, at *5 (D. Kan. Feb. 28, 2007) (citing *Zubulake v. UBS Warburg LLC*, 229 F.R.D. 422, 431 (S.D.N.Y. 2004)).

Defendants' goods or services or any other grant-related good or service or tax-related services; and (5) documents concerning the handling of consumer complaints.[92]

In its first supplemental response, the only document related to its financials Aria produced was a spreadsheet summarizing sales, chargebacks and refunds. The FTC informed Aria's counsel that this document appeared to a recently created document summarizing underlying financial documents. In response, Aria's counsel stated, "Aria produced a spreadsheet summarizing the information contained in the customer files. Aria placed each customer sold, the product purchased, and the amount of the purchase, along with any chargebacks or refunds, onto the spreadsheet to give you a quick picture of what the customer files would tell you."[93] Aria's counsel's response implied that the information contained within the spreadsheet was produced as part of the customer files. The FTC, however, appeared to contend the financial information from the spreadsheet was not produced as part of the customer files. The Court was unable to ascertain whether the underlying financial information had been produced and ordered Aria to do so if it had not already produced this information.

In the instant motion, the FTC contends Aria has failed to supplement its production regarding the underlying documents showing its sales and revenue figures. The FTC also argues Aria has failed to supplement its production regarding the underlying documents evidencing refunds and chargebacks. As evidence, the FTC points out that of the nine entries on the spreadsheet produced that indicate refunds and chargebacks, only one corresponding consumer file appears to contain any documentation of a refund or chargeback.

---

[92] Request Nos. 4, 6–7, 24–27, and 31. Aria's Second Supplement to its Resps. to Reqs. for Produc. from Pl. FTC, ECF No. 306-3.

[93] Email from Micah Bruner to Sara DePaul (Aug. 3, 2010), ECF No. 261-1.

In response to the instant motion, Aria indicates the documents produced are from documents and information existing in Aria's QuickBooks application. To print the documents, Aria exported the information to Excel and printed them. As to chargebacks and refunds, Aria indicates it has produced each customer file it has in its possession. Aria concedes there are customers for whom files are non-existent and others where there is little information contained in the files.

In its reply, the FTC does not indicate why Aria's response is deficient. The Court has no information that Aria has withheld or destroyed any documents. The Court's only concern is whether there are financials in hard copy format in addition to the information contained in Aria's QuickBooks application. Accordingly, within seven (7) days of this Order, Aria shall provide in a supplemental production and response affirmatively stating whether there are any additional responsive documents in hard copy format, including the financials underlying the information in the spreadsheet, and describing with specificity how and where it searched for responsive documents. This is in addition to making a supplemental production in accordance with the FTC's interpretation of the requests.

### 4. Consumer Complaints

Request for Production Nos. 5–7 seek documents referencing or related to complaints about Aria's telemarketing, documents relating to complaints about the ASI Defendants' goods or services or any other grant-related or tax-related services, and documents concerning the handling of consumer complaints or cancellation requests.[94] In response, Aria indicates it produced a "list of those customers who conducted a credit card chargeback [of] their purchase or otherwise

---

[94] Aria's Second Supplement to its Resps. to Reqs. for Produc. from Pl. FTC, ECF No. 306-3.

complained.  The customer files have the complaints, including anything filed with the BBB or the State Attorneys General, from the customer[s] that are in Defendant's control or possession."[95]

In the instant motion, the FTC seeks sanctions because (1) for seven of the eight chargebacks disclosed by Aria, only one customer file contains any reference to the chargeback; (2) none of the customer files contain complaints; and (3) Aria has not produced a list of customers that complained. In response, Aria indicates it has "suffered from terrible document management throughout the period of time in question" and that it has produced all responsive documents in its possession.

The FTC has not provided any evidence that Aria has withheld any documents or that Aria engaged in spoliation of documents responsive to Request for Production Nos. 5–7.  For example, the Court does not know whether any consumers complained in writing to Aria and if so, the dates of those complaints.  Further, the Court has no information whether Aria created written documentation of any complaints received via telephone.  The FTC has not provide any evidence that Aria had a policy of documenting complaints in a particular manner, such that the absence of responsive documents would be suspicious.  Further, Aria is not obligated to create documents, such as a list of customers who complained, in response to a document request.  Based upon what has been presented to it, the Court cannot conclude Aria failed to comply with this Court's prior Order or destroyed responsive documents after it had a duty to preserve them.

However, as discussed above, the Court has difficulty accepting Aria's representations that it has produced all responsive documents.  Accordingly, within seven (7) days of this Order, Aria shall provide a supplemental production and response describing with specificity how and where it searched for responsive documents and affirmatively stating whether further responsive documents

---

[95] *Id.*

exist. This is in addition to making a supplemental production in accordance with the FTC's interpretation of the requests.

### 5. Communications with Fulfillment Houses

Request for Production Nos. 8 and 49 seek all documents and communications received from or sent to any "Fulfillment House" for products, goods, or services sold to Consumers of the ASI Defendants' goods or services or any other grant-related good or service or any tax-related service. The term "Fulfillment House" is defined as "any Person or business, however organized, that You or any Defendant used to supply, put together, ship or provide any and all goods or services . . ." In its supplemental response, Aria indicates the customer files produced would have the information that was sent to any "Fulfillment House."[96]

In the instant motion, the FTC indicates none of the customer files produced by Aria contain any documents referencing or relating to communications between Aria and any other person or entity providing Aria with fulfillment services. However, during Aria's Rule 30(b)(6) deposition, Mr. McAdam testified that one of Aria's primary products, Prime Vantage, was fulfilled by a separate entity and that he believed there was a written agreement regarding the Prime Vantage product. The FTC contends Aria has not complied with this Court's prior Order because no documents regarding how Prime Vantage or any other products and services it markets are fulfilled. In response to the instant motion, Aria represents that it has produced all responsive documents.

The Court does not know when the Prime Vantage product was offered by Aria. If it was not offered until after August 2009, the lack of documentation could be the result of the parties' disagreement over the scope of the document requests. The Court has no information about Aria's

---

[96] *Id.*

relationships with any other "fulfillment houses." The Court is not convinced Aria has deliberately withheld any documents or engaged in spoliation.

However, the Court is concerned about the scope of the search conducted by Aria. Aria appears to have limited its search for responsive documents to the customer files. It seems unlikely any contracts or other written agreements between Aria and any "Fulfillment House" would have been contained in those files. Accordingly, within seven (7) days of this Order, Aria shall provide a supplemental production and response describing with specificity how and where it searched for responsive documents and affirmatively stating whether further responsive documents exist. This is in addition to making a supplemental production in accordance with the FTC's interpretation of the requests.

### 6. Sales Manuals, Policies, Employee Handbooks & Personnel Records

Request for Production Nos. 20, 21, 47, 48, 50, 52, and 53 seek (1) documents related to the discipline or termination of Aria telemarketers in connection with their use, misuse, or non-use of telemarketing sales, verification and customer service scripts; (2) documents identifying Aria's employees, dates of employment, job title, and job duties or job description; (3) documents related to the creation and termination of contracts with independent contractors; and (4) all documents relating to policies and procedures of Aria, including policies and procedures relating to the telemarketing of goods and services.[97]

The FTC contends Aria has violated this Court's prior order because Aria has produced only three independent contractor agreements. Aria responds that it has produced all responsive documents. The absence of certain categories of documents, such as disciplinary records, is not

---

[97] *Id.*

necessarily suspect. It is possible Aria did not discipline any telemarketers or terminate their employment for their use, misuse, or non-use of telemarketing scripts as described in Request for Production No. 47. Further, the FTC has not presented any evidence, such as deposition testimony, that Aria had any written guidelines or policies responsive to the requests.

However, it is more problematic that there are purportedly no records showing when the independent contractors' employment ceased, and the Court questions whether there are sources that contain this information, such as payroll or payment records.

Accordingly, within seven (7) days of this Order, Aria shall provide a supplemental production and response affirmatively stating whether further responsive documents exist and describing with specificity how and where it searched for responsive documents. This is in addition to making a supplemental production in accordance with the FTC's interpretation of the requests.

D.      Attorney's Fees

In addition to other sanctions, the Court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure to comply with a court order unless the failure was substantially justified or other circumstances make an award of expenses unjust.[98] In the instant motion, the FTC seeks to recover the costs it incurred in bringing this motion.

Here, the Court has ordered that both Aria and WPS supplement their productions and has struck DX-2 from the summary judgment record. However, the Court has not imposed sanctions for violating a court order pursuant to Fed. R. Civ. P. 37(b). Thus, it is not mandatory for the Court

---

[98] Fed. R. Civ. P. 37(b)(2).

to award expenses.  In this case, the Court will require the parties to bear their own expenses in connection with this motion.

Accordingly,

**IT IS THEREFORE ORDERED** that Plaintiff Federal Trade Commission's Motion for Sanctions Against Defendants Aria Financial Services LLC and Wealth Power Systems, LLC for Violating Order to Produce Documents (ECF No. 306) is granted in part and denied in part as described herein.

**IT IS FURTHER ORDERED** that DX-2 shall be stricken from the record in consideration of the FTC's Motion for Summary Judgment.

**IT IS SO ORDERED.**

Dated this 24th day of May, 2011, at Topeka, Kansas.

s/K. Gary Sebelius
K. Gary Sebelius
U.S. Magistrate Judge
