**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| FEDERAL TRADE COMMISSION, et al., | ) ) ) |
| Plaintiffs, | ) ) |
| vs. | ) ) Case No. 09-4104-JAR |
| AFFILIATE STRATEGIES, INC., et al., | ) ) ) |
| Defendants. | ) ) |

**MEMORANDUM AND ORDER**

After hearing two days of argument and evidence from the remaining parties in this matter, the Court issued Findings of Fact and Conclusions of Law ("Findings"),[1] finding defendant Meggie Chapman liable under the "assisting and facilitating" provision of the Telemarketing Sales Rule, 16 C.F.R. Part 310 ("TSR"). Plaintiffs were awarded consumer redress damages in the amount of $1,682,950, the full amount sought, representing gross receipts for Chapman's grant research, writing, and coaching services to the Kansas Defendants[2] from January 2008 to April 2009. Before the Court are Chapman's Motion to Alter or Amend the Judgment or, Alternatively, for Remittitur (Doc. 425) and Motion to Stay the Execution of Judgment (Doc. 427). Because the Court does not find that its damages award was either clearly erroneous or manifestly unjust, and does not find that remittitur is appropriate, it denies Chapman's motion to alter or amend. Accordingly, the motion to stay is moot.

---

[1] Doc. 422.

[2] The Kansas Defendants are comprised of Affiliate Strategies, Inc., Apex Holdings International, LLC, Answer Customers, LLC, Grant Writers Institute, LLC, Landmark Publishing Group, LLC, Brett Blackman, Jordan Sevy, and James Rulison.

*Relevant Findings of Fact and Conclusions of Law*

The TSR prohibits any seller or telemarketer from, among other things, "misrepresenting, directly or by implication, in the sale of goods or services. . . (iii) [a]ny material aspect of the performance, efficacy, nature, or central characteristics of goods or services that are the subject of the sales offer."[3]  A violation of the TSR constitutes a "deceptive act or practice" in violation of Section 5(a) of the FTC Act.[4]  In Count V, all Plaintiffs alleged against Chapman a violation of the TSR for assisting and facilitating the Kansas Defendants under 16 C.F.R. § 310.3(b). Under that section, "[i]t is a deceptive telemarketing act or practice and a violation of this Rule for a person to provide substantial assistance or support to any seller or telemarketer when that person knows or consciously avoids knowing that the seller or telemarketer is engaged in any act or practice that violates §§ 310.3(a), (c) or (d), or § 310.4 of this Rule."

On September 16, 2011, this Court issued extensive findings that Chapman substantially assisted the Kansas Defendants and that she knew or consciously avoided knowing that the Kansas Defendants engaged in a deceptive act or practice under the TSR.  With respect to the knowledge element, the Court found "ample evidence" was presented at trial.  The Court noted several states' attorney general inquiries, including one by the Alaska Attorney General "early in her business relationship with the Kansas Defendants," which should have been a "red flag." The Court also noted inquiries by the Kansas Attorney General and by the North Carolina Attorney General in April 2009, stating:

---

[3] 16 C.F.R. § 310.3(a)(2)(iii).

[4] 15 U.S.C. §§ 6102(c), 57a(d)(3).

2

> Certainly, by the time Chapman received the North Carolina Attorney General's inquiry in April 2009, she was placed on notice that either her research results were faulty or the Kansas Defendants were inappropriately marketing her research results. Either way, the Court finds that by wholly ignoring these inquiries and assisting the Kansas Defendants in responding to them, Chapman consciously avoided knowing that the Kansas Defendants engaged in deceptive acts or practices under the TSR.[5]

The Court proceeded to examine other evidence in the record. It noted Chapman's familiarity with the Grant Guide, which Chapman co-authored with Lynne Paeno, and which contained the false 70% success rate touted by the Kansas Defendants. The Court noted Chapman's repeated concessions that neither she nor the Kansas Defendants could substantiate any consumer success that resulted from their services, despite serving over 8000 consumers during their scheme. The Court noted Paeno's deposition testimony that in the summer of 2008, she and Chapman discussed the Kansas Defendants' marketing activities and Paeno told Chapman to be vigilant in monitoring their marketing activities. The Court noted the standard cover letter included in many of Chapman's research results that evidences her knowledge of the assurances that the Kansas Defendants made to consumers. The Court noted Chapman's trial testimony that several grants she included in research results did not exist or had requirements that consumers did not meet, as well as her reliance on unsubstantiated statistics as a basis for her business model. The Court explicitly found that "*all of this evidence* convinces the Court, by a preponderance of the evidence, that Chapman either knew or consciously avoided knowing that the Kansas Defendants[] were violating the TSR by misrepresenting that Chapman's goods and services either guaranteed or made it more likely that they would obtain significant amounts of

---

[5]Doc. 422 at 21.

3

grant money."

*Discussion*

A motion to alter or amend judgment pursuant to Rule 59(e) may be granted only if the moving party can establish: (1) an intervening change in the controlling law; (2) the availability of new evidence that could not have been obtained previously through the exercise of due diligence; or (3) the need to correct clear error or prevent manifest injustice.[6] "Thus, a motion for reconsideration is appropriate where the court has misapprehended the facts, a party's position, or the controlling law."[7] Such a motion does not permit a losing party to rehash arguments previously addressed or to present new legal theories or facts that could have been raised earlier.[8] Chapman extracts two lines from the Court's Findings in arguing that the damages awarded in this case constitute clear error or manifest injustice. According to Chapman, this Court "held" that she was not on notice of the Kansas Defendants' TSR violations until April 2009. Chapman also relies on the Court's finding that her discussion with Paeno about the Kansas Defendants' marketing took place in the summer of 2008. So according to Chapman, the Court must reduce its damages award to gross receipts beginning in the summer of 2008 at the earliest.

Chapman's interpretation of this Court's Findings is inaccurate and based on statements taken out of context. The Court recited a number of facts that took place over the course of

---

[6]*Brumark Corp. v. Samson Res. Corp.*, 57 F.3d 941, 948 (10th Cir. 1995); *Aerotech Res. Inc. v. Dodson Aviation, Inc.*, 191 F. Supp. 2d 1209, 1213 (D. Kan. 2002).

[7]*Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000).

[8]*Brown v. Presbyterian Healthcare Servs.*, 101 F.3d 1324, 1332 (10th Cir. 1996), *cert. denied*, 520 U.S. 1181 (1997).

Chapman's business relationship with the Kansas Defendants in finding that Plaintiffs met their burden of showing that she either knew or consciously avoided knowing that the Kansas Defendants were violating the TSR. The Court's statement that Chapman was placed on notice by April 2009 was merely an observation that the evidence was clear that Chapman had actual notice by this date. The following sentence includes a finding that ignoring *all* of the attorney general inquiries, which started in the early part of her business relationship with the Kansas Defendants, and helping the Kansas Defendants respond to those inquiries, constitute evidence of the knowledge element of the TSR claim. Actual knowledge is not required for liability under the TSR; it is sufficient for plaintiffs to show by a preponderance of the evidence that Chapman consciously avoided knowing that the Kansas Defendants engaged in deceptive marketing. Moreover, after making the statement identified by Chapman, the Court proceeded to identify other evidence that supported its finding, in addition to the attorney general inquiries.

Similarly, Chapman's reliance on the Court's factual finding that the Paeno discussion about the Kansas Defendants' marketing practices did not occur until the summer of 2008 is misplaced. Again, the Court observed, in conjunction with several other findings, that this conversation occurred in the summer of 2008 and is one of many indicators that Chapman consciously avoided knowing that the Kansas Defendants were engaged in deceptive marketing practices. The Court relied on several other pieces of evidence to support its finding that Plaintiffs established the knowledge element of the claim, as demonstrated by the Court's ultimate finding that "all of this evidence" shows that Chapman either knew *or* consciously avoided knowing that the Kansas Defendants were violating the TSR. Because the Court's finding stemmed from evidence dating back to the beginning of Chapman's business relationship

with the Kansas Defendants, imposing damages based on gross receipts between January 2008 and April 2009 was not clear error nor manifestly unjust.

Chapman alternatively seeks remittitur because the damages imposed are excessive.  But this argument relies on Chapman's erroneous contention that the Court found that "Chapman did not know of the improper telemarketing activities from late 2007 to April of 2009."  As described above, the Court made no such finding.  Remittitur is only appropriate if the award is "so excessive that it shocks the judicial conscience and raises an irresistible inference that passion, prejudice, corruption, or other improper cause invaded the trial."[9]  Chapman has not made this showing.  Her only argument that the damage award shocks the conscience is based on her misinterpretation of the Court's findings that the knowledge element was not met prior to the summer of 2008.  For the reasons already described in this Memorandum and Order, and discussed in detail in the Court's Findings, the damages award is not excessive and Chapman's motion for remittitur is denied.

**IT IS THEREFORE ORDERED BY THE COURT** that Chapman's Motion to Alter or Amend the Judgment or, Alternatively, for Remittitur (Doc. 425) is **denied**.  In light of this ruling, the Court further finds that Chapman's Motion to Stay the Execution of Judgment (Doc. 427) pending a decision on the motion to alter or amend is **moot**.

Dated: November 16, 2011

 S/ Julie A. Robinson
JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE

---

[9] *Vining v. Enter. Fin. Group, Inc.*, 148 F.3d 1206, 1216 (10th Cir.1998).