IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

FEDERAL TRADE COMMISSION, et al., )
)
        Plaintiffs, )
)
  v. )   Case No. 09-4104-RDR
)
AFFILIATE STRATEGIES, INC. et al., )
)
        Defendants. )

## MEMORANDUM AND ORDER

Judge Robinson of this court entered a judgment of $1,682,950 against defendant Meggie Chapman in the above-captioned consumer protection action brought by the Federal Trade Commission and four states. Subject to a reservation of rights, State Farm Fire and Casualty Company provided defense counsel for Chapman during the case before Judge Robinson and on appeal. Judge Robinson's order was affirmed by the Tenth Circuit on May 7, 2013 and Judge Robinson has transferred the case to the undersigned judge for further proceedings.

Plaintiffs, as judgment creditors, have filed a writ of garnishment (Doc. No. 447) to collect upon the judgment by garnishing an errors and omissions insurance policy issued by State Farm to Chapman. This case is now before the court upon the motion of the garnishee State Farm to quash plaintiffs' writ of garnishment. Doc. No. 469.

The issue before the court is whether the insurance policy covers the conduct encompassed in this lawsuit.

I. Factual background

The relevant facts appear to be undisputed. Plaintiffs alleged and prevailed in proving that Chapman and other defendants violated the Telemarketing and Consumer Fraud and Abuse Prevention Act, 15 U.S.C. §§ 1601-1608, while marketing and selling goods and services upon the unfounded promise or representation that the buyers of the goods and services would have success in obtaining government grants. Specifically as to defendant Chapman, Judge Robinson found that she violated the Telemarketing Sales Rule (TSR), 16 C.F.R. 310.3(b), which prohibits anyone from providing "substantial assistance or support to any seller or telemarketer when that person knows or consciously avoids knowing that the seller or telemarketer is engaged in any act or practice that violates" regulations prohibiting deceptive or abusive telemarketing conduct. In support of this holding, Judge Robinson found that:

- Chapman wrote portions of a "Grant Guide" which was sold to consumers;

- she researched potential money sources for the consumers who purchased grant research services and completed lists of potential money sources which were then provided to purchasing consumers;

- she helped develop a questionnaire for telemarketers to use in collecting information from consumers and provided limited training to telemarketers;

- she performed the "vast majority if not all of the research fulfillment for the Kansas Defendants" which was provided to more than 8,000 individual consumers;

2

- she performed grant-research, grant writing, and grant coaching and mentoring services sold by other defendants;

- she supplied talking points to respond to questions or complaints from consumers;

- she responded to inquiries from two state attorneys general regarding the Kansas Defendants' grant-related services, but she never reviewed defendants' telemarketing materials or tracked whether purchasing consumers ever received a grant after purchasing defendants' goods and services; and

- she performed similar work for a different operation after receiving notice of the original complaint and notice of a restraining order against the defendants in this case.

In her findings of fact and conclusions of law, Judge Robinson agreed with plaintiffs that the court should award "damages in the amount of the gross revenue collected by Chapman in the course of assisting and facilitating the Kansas Defendants." Doc. No. 422, p. 23. Judge Robinson determined that there was sufficient evidence that Chapman collected $1,682.950 in the course of assisting and facilitating the Kansas Defendants' violation of the TSR. She awarded plaintiffs damages against Chapman in this amount. Later, in the judgment entered by the court, Judge Robinson ordered that funds paid to plaintiffs as a result of this lawsuit "be deposited into a fund or funds administered by the Plaintiffs or their designees to be used for consumer redress and any attendant expenses for the administration of any redress fund." Doc. No. 423, p. 2. She further ordered that:

> In the event that direct redress to consumers is wholly or partially impracticable or funds remain after redress is completed, the Plaintiffs may apply any remaining funds for any other equitable relief . . . that they determine to be reasonably related to Defendant's practices alleged in the Second Amended Complaint. Any funds paid to the [Federal Trade] Commission not used for equitable relief shall be deposited into the U.S. Treasury as disgorgement.

Id. at pp. 2-3.

II. Choice of law

It is alleged without dispute that defendant Chapman is a resident of Arizona, and that her business was located in Arizona and conducted its business there. The insurance policy in question was purchased in Arizona. State Farm contends that Arizona law applies to this case because Kansas applies the doctrine of lex loci contractus – the place of the making of the contract (in this instance Arizona) controls. See Clements v. Emery Worldwide Airlines, Inc., 44 F.Supp.2d 1141, 1145 (D.Kan. 1999). Plaintiffs do not disagree that Kansas choice-of-law principles apply, but suggest that Kansas law should control because State Farm has not established that there is a conflict between Kansas and Arizona law.

It appears to the court that there is no conflict between Kansas and Arizona law. So, the choice of law question may be academic. But, if the court had to decide, the court would find that Kansas choice-of-law principles govern. See A.I. Trade Finance, Inc. v. Petra International Banking Corporation, 62

F.3d 1454, 1465 (D.C.Cir. 1995)(it is the source of the right, not the basis of federal jurisdiction, which determines the controlling law); see also Commercial Union Ins. Co. v. Sea Harvest Seafood, 75 F.Supp.2d 1264, 1269 (D.Kan. 1999)(in the absence of a federal rule, state law controls disputes concerning maritime insurance policies, and if state laws conflict, the court determines the choice of state law using choice of law rules of the forum).[1] Under those principles, Arizona law controls the construction of the insurance contract.

III. Arizona insurance policy construction principles

Under Arizona law, the provisions of an insurance policy are construed according to their plain and ordinary meaning. Samsel v. Allstate Ins. Co., 59 P.3d 281, 284 (Ariz. 2002); Sparks v. Republic Nat. Life Ins. Co., 647 P.2d 1127, 1132 (Ariz. 1982). Ambiguous provisions are construed against the insurer. Id. The insured carries the burden of establishing coverage under an insuring clause, while the insurer must establish the applicability of any exclusion. Sciranko v. Fidelity & Guar. Life Ins. Co., 503 F.Supp.2d 1293, (D.Ariz. 2007); Keggi v. Northbrook Prop. & Cas. Ins. Co., 13 P.3d 785, 788 (Ariz.App. 2000). In reviewing exclusion clauses which are subject to different constructions, the court examines the

---
[1] The court recognizes that there is contrary authority holding that federal common law provides the conflict of law principles for deciding these issues. E.g., Edelmann v. Chase Manhattan Bank, 861 F.2d 1291, 1294 (2d Cir. 1988). Using those principles, however, might lead to the same result.

5

purpose of the exclusion in question, the public policy considerations involved, and the transaction as a whole. Ohio Cas. Ins. Co. v. Henderson, 939 P.2d 1337, 1339 (Ariz. 1997)(quoting Transamerica Ins. Group v. Meere, 694 P.2d 181, 185 (Ariz. 1984)). In this case, plaintiffs have stepped into the shoes of the judgment debtor, Chapman. Carpenter v. Superior Court, 422 P.2d 129, 131 (Ariz. 1966). Consequently, they have the burden of proof where an insured would have the burden of proof.

IV. Chapman's conduct does not constitute a "Wrongful Act" under State Farm's policy.

State Farm's first argument to quash the writ of garnishment is that State Farm is not legally obliged to pay under the policy because the damages did not result from a "Wrongful Act" as that term is defined in the policy. The court agrees.

The policy provides that State Farm shall pay those sums for which Chapman and/or her company "become legally obligated to pay as **Damages** . . . as a result of a **Wrongful Act** in performing **Insured Services** for others." The term "**Wrongful Act**" is defined as including "[a] negligent act, error or omission."[2] The question is whether Chapman's conduct in this case constitutes "a negligent act, error or omission."

---

[2] The term "Wrongful Act" is defined to include other types of conduct as well. But, those types of conduct are not alleged in this case.

6

The term "negligent act, error or omission" means a "negligent act, [a negligent] error or [a negligent] omission." This is how this court interpreted the phrase in Golf Course Superintendents Association of America v. Underwriters at Lloyd's, London, 761 F.Supp. 1485, 1490 (D.Kan. 1991). See also, New Hampshire Ins. Co. v. Westlake Hardware, Inc., 11 F.Supp.2d 1298, 1301 (D.Kan. 1998) aff'd, 1999 WL 1066836 *3 (10th Cir. 11/26/1999).

The conduct ascribed to Chapman and her company in Judge Robinson's order does not constitute negligence. It is intentional and conscious wrongdoing or conscious avoidance of knowledge of other defendants' wrongdoing. Therefore, it is not covered by the State Farm insurance policy.

Plaintiffs cite Continental Cas. Co. v. Reed, 306 F.Supp. 1072 (D.Minn. 1969) for a contrary construction of the phrase "negligent act, error or omission." But, this court and the Tenth Circuit declined to follow that case's holding in Golf Course Superintendents and Westlake Hardware. We do not believe the result would be different applying Arizona law.

Plaintiffs also cite Phoenix Control Systems, Inc. v. Insurance Co. of North America, 796 P.2d 463 (Ariz. 1990)("PCS"). In PCS, the insurance policy in question covered only injury or damage which was "neither expected nor intended by the insured." The court held that there was a factual issue

7

precluding summary judgment as to whether acts of copyright infringement were intentional because the insured may have believed the materials in question were in the public domain. The court referred to a "two-prong inquiry" under Arizona law to determine an insured's intent. 796 P.2d at 467. Under this two-pronged approach, the court must determine either that the insured had a "subjective desire to cause harm" or that "the nature and circumstances of the insured's intentional act were such that harm was substantially certain to result." Id. at 467-8. The court stated that the question must be "whether the insured intentionally acted wrongfully or whether his intentional act unintentionally resulted in wrongful conduct." Id. This analytical format was repeated in Henderson, 939 P.2d at 1344.

The pleadings before the court show no possibility of plaintiffs meeting their burden. Judge Robinson found that "the Kansas Defendants" violated the TSR by misrepresenting, directly or indirectly, material aspects of the performance, efficacy, nature, or central characteristics of the grant-related goods or services they sold." Doc. No. 422, p. 16. She further found that "Chapman did not provide incidental services to the Kansas Defendants" and that "Chapman both provided substantial assistance and support, and knew or consciously avoided knowing that the Kansas Defendants engaged in a deceptive act or

8

practice under the TSR." Id. at p. 17. These findings and the others set forth earlier in this opinion do not allow for the possibility that Chapman acted intentionally, but unintentionally assisted in the Kansas Defendants' wrongful conduct. Chapman "knew or consciously avoided knowing" of the deceptive acts or practices that violated the TSR. These findings distinguish this case from PCS.

Plaintiffs further assert that "State Farm appears to argue" that the definition of "Wrongful Act" does not include any knowing acts and that such a construction would render superfluous the policy's exclusion (in a separate provision) of dishonest and fraudulent acts from coverage. Doc. No. 470, p. 4. Plaintiffs contend that the court should avoid giving concurrent meanings to these two provisions. The court disagrees with plaintiffs' argument.

The plain meaning of each provision works to bar coverage of knowingly wrongful acts. Plaintiffs, in essence, are asking the court to create a conflict between two provisions which would have to be reconciled, and to consider whether one provision unreasonably emasculates coverage promised in the other provision. The court declines to do so because we believe our interpretation of the policy is a reasonable one which is consistent with the plain and ordinary meaning of its terms.

Plaintiffs also argue that State Farm has waived its claim that Chapman's conduct was not covered by the policy by virtue of its statements and actions in providing a defense to plaintiffs' claims against Chapman. Arizona law recognizes, however, that an insurer may perform its contractual duty to defend while reserving the right to assert a potential coverage defense. Parking Concepts, Inc. v. Tenney, 83 P.3d 19, 22 (Ariz. 2004); see also, United Services Auto. Ass'n v. Morris, 741 P.2d 246, 249 (Ariz. 1987). We find no waiver by State Farm.

V. The judgment issued in this case qualifies as "Damages" under the State Farm policy.

State Farm contends that the writ of garnishment should be quashed because the judgment issued in this case does not qualify as "damages" under the terms of the insurance policy. We reject this argument.

"Damages" is defined in the policy as follows:

> **"Damages"** means money judgment, award or settlement, except those for which insurance is prohibited by law. **Damages** does not include fines or penalties; or fee, deposits, commissions or charges for goods or services.

The court finds that the money judgment ordered by Judge Robinson reasonably falls within this broad definition. While State Farm asserts correctly that the term "damages" is not stated in the judgment, Judge Robinson does refer to the monetary award as "damages" in her findings of fact and

conclusions of law (Doc. No. 422, p. 23), as well as in her order denying defendant Chapman's motion to alter and amend (Doc. No. 443, p. 1).

It may be contended that state law would prohibit insurance coverage for a judgment depriving Chapman of "ill-gotten gains." See, e.g., Level 3 Communications, Inc. v. Federal Ins. Co., 272 F.3d 908, 910 (7th Cir. 2001)(employing this concept as an "interpretative principle" for construing a policy, not as an issue of enforceability). But, while Arizona courts consider public policy in construing insurance policy provisions, they do not always hold that damages awarded as restitutionary relief are prohibited by public policy. See Cohen v. Lovitt & Touche, Inc., 2013 WL 4779630 *3-4 (Ariz.App. 9/6/2013)(public policy does not prohibit insurance coverage for restitutionary payments); but see Alanco Technologies, Inc. v. Carolina Casualty Ins. Co., 2006 WL 1371633 *4 (D.Ariz. 5/17/2006)(finding that rescissory damages are uninsurable under the law in reliance upon Level 3 and other cases).

As this is an area of some ambiguity, for the purposes of this order the court shall construe "damages" more broadly than argued by State Farm.

VI. Coverage is excluded by the "regulatory authority" exclusion in the State Farm policy.

State Farm's next argument is that coverage is excluded by a Management Consultant Endorsement contained in the policy

which provides that State Farm is "not obligated to pay **Damages** . . . . or defend **Claims** made by: e. Any regulatory authority or any administrative actions brought by any federal, state or local governmental entity." The court finds that the exclusion does apply.

This case involved allegations by the FTC and State Attorneys General that Chapman violated an FTC regulation, the TSR, 16 C.F.R. Part 310. Doc. No. 422, pp. 14-15. Thus, the FTC is a regulatory authority which made a claim which required Chapman to pay damages. Because the State Attorneys General are empowered to enforce the TSR through this litigation, they also constitute a regulatory authority. A common definition of "authority" is the power or right to enforce obedience. Oxford Legal Dictionary, [www.oed.com](www.oed.com).

We reject plaintiffs' arguments against the application of this exclusion from coverage. Contrary to plaintiffs' contention, we believe our construction of the relevant language follows its plain meaning. Plaintiffs suggest that such "regulatory authority" clauses are enforced only when the clauses specifically identify the agencies to which they apply. The court does not find case law for this proposition.

Plaintiffs further contend that the exclusion, even if unambiguous, should not be enforced under the "reasonable expectations" doctrine of Arizona law. Under the "reasonable

12

expectations" doctrine, "a contract term is not enforced if one party has reason to believe that the other would not have assented to the contract if it had known of that term." First American Title Ins. Co. v. Action Acquisitions, LLC, 187 P.3d 1107, 1113 (Ariz. 2008). We do not believe that doctrine applies here.

"A court may apply the reasonable expectations doctrine when a reasonably intelligent consumer cannot understand the policy language; when an insured does not receive full and adequate notice and the provision is unusual, unexpected, or emasculates apparent coverage; when some activity reasonably attributable to the insurer would create an objective impression of coverage in the mind of a reasonable insured; or when some activity reasonably attributable to the insurer has induced an insured to reasonably believe that coverage exists, although the policy clearly denies such coverage." American Family Mut. Ins. Co. v. White, 65 P.3d 449, 455 (Ariz.App. 2003); see also Darner Motor Sales, Inc. v. Universal Underwriters Ins. Co., 682 P.2d 388, 399 (Ariz. 1984)(rule applies to contracts "made up of standardized forms which, because of the nature of the enterprise, customers will not be expected to read and over which they have no real power of negotiation").

Plaintiffs proffer little evidence regarding Chapman's reasonable expectations as to the insurance policy. Plaintiffs

13

argue, however, that the doctrine should apply because the "regulatory authority" exclusion was not negotiated; was not placed prominently within the policy; is vaguely phrased; has the potential to dramatically subtract from coverage; and was not referred to in State Farm's first two reservation of rights letters (although it was referred to in a "supplemental reservation of rights" letter dated April 19, 2012).

The court finds that the language of the "regulatory authority" exclusion is sufficiently clear and obvious to an insured that it should not be considered contrary to reasonable expectations. The exclusion is not hidden within boilerplate language in the policy. No evidence has been proffered of any understanding between Chapman and State Farm which was part of the negotiations, but is adverse to the policy language. Nor do we believe that case law supports a finding that State Farm's failure to raise the exclusion in some reservation of rights letters or other litigation proves that the exclusion language contradicts the reasonable expectations of the insured. Therefore, the court finds that the "regulatory authority" exclusion prevents coverage.[3]

VII. Coverage is also excluded by the clause barring coverage of claims alleging "Gain, Profit or Advantage to which the Insured is not Legally Entitled."

---

[3] We do not reach State Farm's claim that plaintiffs are estopped from arguing against the "regulatory authority" exclusion by virtue of their contention before the Tenth Circuit that, pursuant to 11 U.S.C. § 362(b)(4), an automatic bankruptcy stay did not apply to this matter because this action was brought to enforce governmental police and regulatory power.

State Farm contends that coverage is also excluded by the policy provision which states: "We are not obligated to pay **Damages** or **Defense Costs** or defend **Claims** for, arising directly or indirectly out of, or alleging: . . . e. Gain, profit or advantage to which any of **You** are not legally entitled." State Farm contends that the judgment rendered against Chapman represented the recovery of funds to which she was not legally entitled because Judge Robinson ordered that Chapman pay as "consumer redress" the entire amount of compensation she received while substantially assisting the TSR violation. The court finds that Judge Robinson's award of damages arose "directly or indirectly" from "gain, profit or advantage" to which Chapman was not legally entitled, because it derived from her substantial assistance and facilitation of the TSR violation. The cases cited by plaintiffs in opposition to this finding are not persuasive.

Plaintiffs cite Alstrin v. St. Paul Mercury Ins. Co., 179 F.Supp.2d 376 (D.Del. 2002). In Alstrin, the court held that exclusion language barring claims "arising out of, based upon or attributable to the gaining in fact of any profit or advantage to which an insured was not legally entitled" did not exclude federal securities law claims. The court noted that the complaints in question did not allege the acquisition of any profit or advantage to which the insured were not entitled. In

addition, the court noted that applying the exclusion to the securities law claims would render valueless the broad coverage for securities law claims promised elsewhere in the policy. In contrast, in the case at bar, plaintiffs did make a claim in the complaint for restitution and disgorgement of ill-gotten gains. In addition, there is no specifically identified coverage in the insurance policy in this case which is emasculated by the court's interpretation of the "gain, profit or advantage" exclusion. Therefore, we find the Alstrin case to be distinguishable.

Plaintiffs also cite National Union Fire Ins. Co. v. Continental Ill. Corp., 666 F.Supp. 1180 (N.D.Ill. 1987)("CIC"). In CIC, with one exception, the underlying litigation made no claims of personal profiteering. The insurance company asserted that a claim that bonus incentives were used to encourage lending officers to take greater lending risks constituted a claim of personal profiteering, but the court disagreed. The court determined that the officers were legally entitled to the bonus incentives. Thus, in contrast to the case at bar, the alleged illegal profiteering in CIC was not illegal or connected to the underlying litigation. Here, Chapman profited from her illegal substantial assistance of the TSR violation, and this illegal profiteering was directly connected to the underlying litigation.

16

Finally, plaintiffs cite Research Corp. v. Westport Ins. Corp., 289 Fed.Appx. 989 (9th Cir. 2008). In this case the court found that an insurance company had a duty to defend because the exclusion clause did not apply to all the claims in the underlying litigation, some which did not require a showing of unjust enrichment or illegal profit. Again, the court finds this case distinguishable because Judge Robinson made a finding in the case at bar that the damages awarded constituted revenue collected by Chapman in the course of illegally assisting and facilitating the violation of the TSR.

The court finds that the damages awarded by Judge Robinson arise from claims alleging gain, profit or advantage to which Chapman was not legally entitled. Therefore, they are excluded from coverage by the State Farm policy.

VIII. **Coverage is also excluded by a clause providing that State Farm is not obligated to pay damages for acts which are dishonest, fraudulent, or intentionally committed while knowing it was wrongful.**

State Farm contends that the writ of garnishment should be quashed because the policy states that State Farm is not obligated to pay damages for "An act or omission that a . . . court . . . finds dishonest, fraudulent, criminal, malicious or was intentionally committed while knowing it was wrongful." We accept this argument for reasons which are consistent with our previous finding that Chapman's conduct, because it was

17

intentionally wrongful, does not fall within the definition of a "Wrongful Act." Judge Robinson found that Chapman violated the TSR, which prohibits anyone from providing "substantial assistance or support to any seller or telemarketer when that person knows or consciously avoids knowing that the seller or telemarketer is engaged in any act or practice that violates" regulations prohibiting deceptive or abusive telemarketing conduct. Thus, a court has found that Chapman should pay damages for actions which were intentionally committed while knowing they were wrongful. This finding satisfies the exclusion claimed by State Farm.[4]

IX. <u>Other arguments</u>

State Farm also argues that finding coverage here would be contrary to Arizona public policy and that some of Chapman's actions are not covered because they preceded the effective date of the insurance policy. Given the court's holdings as to State Farm's other arguments, we do not believe it is necessary to decide these issues.

---

[4] State Farm has argued further that plaintiffs are estopped from arguing against this exclusion by plaintiffs' contention before the Bankruptcy Court that the judgment against Chapman may be nondischargeable, pursuant to 11 U.S.C. § 523(a)(2)(A), because the debt was for money obtained by "false pretenses, a false representation, or actual fraud . . ." We do not decide this argument.

X. <u>Conclusion</u>

For the above-stated reasons, the court shall grant State Farm's motion to quash the writ of garnishment. Doc. No. 469. The motion for hearing (Doc. No. 459) shall be denied.

**IT IS SO ORDERED.**

Dated this 20th day of September, 2013, at Topeka, Kansas.

*s/Richard D. Rogers*
United States District Judge